## MILLETTE v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. March 5, 1925.)

### No. 3418.

Receiving stolen goods ⊜⇒8(3)—Evidence held to sustain conviction for interstate transportation of stolen motor vehicle.

Evidence that defendant sold automobiles, knowing them to have been stolen, to a dealer in cars in another state, within driving distance, where they were driven by the purchaser, *held* sufficient to support a finding by the jury that he caused them to be "transported in interstate commerce," within National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d).

In Error to the District Court of the United States for the Western District of Wisconsin.

Criminal prosecution by the United States against Ernie G. Millette. Judgment of conviction, and defendant brings error. Affirmed.

William J. Quinn, of St. Paul, Minn., for plaintiff in error.

Stanley M. Ryan, of Janesville, Wis., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Plaintiff in error, with two others, Krueger and Goode, were indicted for violation of the National Motor Vehicle Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f), which provides: "Whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished" etc. Krueger and Goode were acquitted. The offense charged was the transportation from Minnesota into Wisconsin of two Buick touring cars, the defendants knowing them to have been stolen.

The cars were in fact stolen. That there was evidence tending to show Millette knew they were stolen is not and could not well be controverted. The one proposition upon which plaintiff in error relies is that the evidence wholly fails to show that he caused the automobiles to be transported interstate.

If this is the state of the record, the prosecution would, of course, fail, since, notwithstanding Millette knew the automobiles were stolen, the transportation interstate is the element which alone confers federal jurisdiction. Millette did not actually drive the cars into Wisconsin, but remained in St. Paul, from whence they were driven, and, if he did not cause them to be transported, the judgment against him cannot stand. If, however, there was evidence from which the jury might fairly conclude that he intended and planned that the cars should be so transported, and that wholly or partly through his planning and contriving his purpose was effected, and the cars were so transported interstate, the charge that he caused it to be done would be sustained. United States v. Kenofskey, 243 U. S. 440, 37 S. Ct. 438, 61 L. Ed. 836; Demolli v. United States, 144 F. 363, 75 C. C. A. 365, 6 L. R. A. (N. S.) 424, 7 Ann. Cas. 121; Burton v. United States, 142 F. 57, 73 C. C. A. 243.

Millette was conducting a restaurant in the business district of St. Paul, Minn. Krueger, who lived about 75 miles away, in Clayton, Wis., dealt in live stock and had a garage there; the latter being conducted by Goode. Krueger frequently came to St. Paul with stock, and quite occasionally ate at Millette's restaurant, and they were acquainted. Shortly after the first car was stolen, Krueger and Goode were in the restaurant, and Millette learned they were trying to sell to a former resident of Clayton, then living in St. Paul, a new Buick roadster. He told them he knew of a Buick roadster, almost new, which could be obtained for a reasonable price, and a little later in the same day the prospective customer was with them in the restaurant, but said he wanted a new car. Millette suggested that Krueger buy this roadster, and Krueger said he "could not sell a roadster in his country"; Millette's own version of the conversation being that Krueger said nobody bought roadsters in Wisconsin where he (Krueger) lived. Millette then asked if they could sell a good touring car, and described a Buick car (which the evidence showed had been stolen from its owner in St. Paul two days before), fixing a price of $550, and coming down to $450. They left, saying they would return in the afternoon, and about 3 o'clock returned. Millette said he was busy and kept them waiting for quite a while, whereupon Krueger said they were obliged to go back home, and could wait no longer. They then re-

sumed the negotiations, which resulted in Krueger giving his check to Millette for $450; Millette saying, if they were not satisfied with the car when they saw it, he would return the check., They got into Millette's car, and he drove them about 2½ miles, to a place where he said the car would be. It was driven up shortly afterwards with two strange men in it, was examined and accepted; the strangers having no part in the negotiations, save one of them saying the car was all right. The strangers got into Millette's car, and Krueger and Goode into the purchased car, driving it about a block to the direct road to Clayton, and thence to Clayton, and some days afterwards sold it at a considerable profit, as Millette soon afterwards was informed. Some weeks after this transaction Millette phoned Krueger at Clayton that he knew of another Buick touring car for the same price, whereupon Goode, with Krueger's check to Millette for $450, came to St. Paul and went through practically the same negotiations respecting this car, resulting in the delivery of the check to Millette, who in his car thereupon drove Goode to the same place, where on the street, as before, they met two men, late in the afternoon, with the Buick touring car, examined it, and again drove around the corner to the road leading to Clayton, whither Goode drove the car. Millette as before, took the two men in his car and drove away. This car, it appears, was stolen the day before from its owner in St. Paul. In each case the cars, when delivered, were supplied with gas and oil, so that no stops on that account were required before reaching Clayton. It is pointed out that the Minnesota registration law is such that it would be specially difficult and hazardous to undertake registration in Minnesota of a stolen automobile theretofore having registry in that state, as indicating a motive wherefor those engaged in this traffic would be slow to sell in Minnesota a stolen Minnesota car, aside from the probably safer plan of selling the car as far away as may be from the place in which it was owned and stolen.

We are of the view that in all this there was warrant in the evidence for the jury to conclude that it was Millette's purpose and plan and contrivance to have these cars transported to a place beyond the Minnesota boundaries. True, it does not appear that he obligated the purchaser to take the cars out of the state. If Krueger and Goode were, as the jury found, innocent of wrongdoing, Millette could not well have gone so far as to attempt binding them to such an undertaking, since they would thereby have become suspicious of the title, and the deals would likely have fallen through. But the jury was not unwarranted in concluding that he adopted the best available means to sell the cars and insure their transportation beyond the limits of the state, without making manifest to the buyers his purpose to have them so transported. While it is true that the purchaser might have disposed of the cars the very next moment to some one in Minnesota, Millette doubtless knew it was extremely improbable this would be done; but, having been informed that such purchases as they would make would be for disposition in and about Clayton, where these people were dealing in cars, the circumstances sufficiently indicate that he had planned the cars should be taken there, and he cannot be heard to complain that his plan succeeded, and that the very probable result of his planning had been achieved. If, as we think they were, the jury was warranted in concluding that he planned to dispose of these stolen cars in such manner that they should be transported from Minnesota to Wisconsin, and that this purpose was effected, we believe the conclusion is justified that he caused the cars to be transported in interstate commerce, thus transgressing the statute.

The judgment of the District Court is affirmed.