### OVERBY v. UNITED STATES. CORMANY v. SAME. ALBERTSON v. SAME.

Circuit Court of Appeals, Seventh Circuit.
February 1, 1928.

Nos. 3949–3951.

1. **Conspiracy** �køø29—Receiving stolen goods �køø9(2)—Instruction that, if defendant sold stolen automobiles knowing they would be transported, defendant was guilty of unlawful interstate transportation and conspiracy, held proper (National Motor Vehicle Theft Act [18 USCA § 408]).

Instruction that if defendant sold stolen automobiles to C. and A., or both of them, knowing that they had been stolen and that they were going to transport them into another state, and they were so transported, then defendant would be guilty of violating National Motor Vehicle Theft Act (18 USCA § 408) and of conspiracy to violate act, held properly given.

2. **Conspiracy** ⊘køø48—Receiving stolen goods ⊘køø9(1)—Whether defendant selling automobiles to codefendants was guilty of violating National Motor Vehicle Theft Act and conspiracy held for jury (18 USCA § 408).

In prosecution for unlawful interstate transportation of stolen automobiles in violation of the National Motor Vehicle Theft Act (18 USCA § 408) and conspiracy to violate act, evidence of guilt of defendant selling automobiles to codefendants held sufficient to go to jury.

**3. Conspiracy ⊂⇒47—Receiving stolen goods ⊂⇒8(3)—Evidence held to support conviction of defendants buying automobiles for violating National Motor Vehicle Theft Act and conspiracy (18 USCA § 408).**

In prosecution for unlawful interstate transportation of stolen automobiles in violation of the National Motor Vehicle Theft Act (18 USCA § 408), and conspiracy to violate that act, evidence *held* sufficient to justify conviction of defendants buying automobiles from codefendant.

In Error to the District Court of the United States for the District of Indiana.

Floyd Overby, Frank Cormany, and Fred Albertson were convicted of the unlawful interstate transportation of stolen automobiles, in violation of the National Motor Vehicle Theft Act, and for conspiracy to violate that act, and each brings error. Affirmed.

Walter Clements, of South Bend, Ind., for plaintiff in error Overby.

Benjamin C. Bachrach, of Chicago, Ill., for plaintiffs in error Cormany and Albertson.

Albert Ward, of Indianapolis, Ind., for the United States.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. These writs bring for review convictions on four counts of an indictment; three charging unlawful interstate transportation of stolen automobiles, in violation of the National Motor Vehicle Theft Act (18 USCA § 408), and one charging conspiracy to violate that act.

Plaintiffs in error Cormany and Albertson were dealers in used cars at Warsaw, Ind. Plaintiff in error Overby, in Chicago, sold them nearly new Ford cars, stolen for him by his privately hired thief within a few miles of his place of business in Chicago. [1, 2] For Overby, reversal is urged because the court overruled his motion to direct a verdict of not guilty, and also because of the giving of this instruction:

"If Overby sold stolen automobiles to Cormany and Albertson, or both of them, knowing that they had been stolen and that they were going to transport them into the state of Indiana, and they were so transported, then he would be guilty."

Overby did not testify. If the instruction complained of was not erroneous, the case as to him must be affirmed.

The jury was, generally, quite carefully and fully instructed.

The evidence showed that Overby sold the other defendants Ford cars, stolen for him under contract at $100 per car within a few

miles of his sales' place. He caused the engines, which bore the chief means of identification, namely, the serial number, to be removed, and put into the nearly new cars new engines, with a different serial number, and, in some cases, other changes were made that tended to destroy the identity of the cars. He partially complied with the laws of Illinois by giving a sort of bill of sale, in some of which he gave the address of the purchasers as Warsaw, Ind., and in one or more as Leesburg, Ind. Checks, taken by him in payment, were on Indiana banks. There were eight or ten transactions during two or three months, and thirty-five cars, at least eleven of which were shown to have been stolen, were sold by Overby to Cormany and Albertson. Indiana dealers' licenses were placed upon the cars by the purchasers in Overby's place of business. In a recent case we said:

"If, however, there was evidence from which the jury might fairly conclude that he intended and planned that the cars should be so transported, and that wholly or partly through his planning and contriving his purpose was effected, and the cars were so transported interstate, the charge that he caused it to be done would be sustained."

And, again:

"If * * * he planned to dispose of these stolen cars in such manner that they should be transported from Minnesota to Wisconsin, and that this purpose was effected, we believe the conclusion is justified that he caused the cars to be transported in interstate commerce." Millette v. U. S. (C. C. A.) 4 F.(2d) 635.

The evidence here against Overby is much stronger. There can be no question but that his intentions, purposes, and interests were to be served by having the cars taken into Indiana. The case is not a close one on the facts, and, while the instruction is somewhat general, it is accurate, and could not have misled the jury.

[3] The defendants Albertson and Cormany were partners. Their claim for reversal is that there is no substantial evidence upon which the jury could properly have found them guilty. Both of them testified that they had no knowledge that any car purchased by them from Overby was stolen.

It is urged upon us that they were farmers and the inference drawn that they were men of not very much experience. Cormany was 50 years of age, had been a farmer and stockraiser, and during the war had purchased large numbers of horses for the United States government and also for the French government. He also for several years, had

dealt in secondhand automobiles, and was a man of large and varied experience. Albertson was 26 years of a'ge, had been in the automobile and garage business for ten years in several cities in Indiana, and never had been a farmer, and was not lacking in experience.

It is claimed that the evidence shows that the average price paid for the cars was about $385, and that that is evidence of such a sound price that it rebuts any presumption of knowledge on the part of the defendants that the cars were stolen. If, as Cormany swore, he reimbursed the purchasers of the stolen cars by paying them $6,400, it thus appears that he got nearly $600 apeice for secondhand Ford cars, which clearly indicates that they must have been approximately new cars and that they had a margin of nearly $200 in them.

Cormany and Albertson met Overby in the salesrooms of an authorized Ford dealer in Chicago. For some reason, not clearly shown, they went to Overby's place, Fifty-Ninth street and Ashland avenue, and, without making any inquiry at any time as to his standing or reputation, bought from him, within two or three months, on eight or ten different occasions, thirty-five nearly new Ford cars, the oldest one of which was purchased only seven or eight months before it was stolen, and many of the others were much newer. Eleven of the cars so purchased by Albertson and Cormany were stolen, and, while the cars themselves were nearly new, some of them had engines that were entirely new, put in by Overby. Albertson testified:

"Some of these cars that we got from Overby were practically new. I could not say as to whether some of them had new bodies on old chassis. Some of them seemed to have new motors in them, had brand new motors. I could not tell you whether there were as many as twelve. There might have been a dozen, probably a dozen."

We are of opinion that the foregoing facts, together with the further fact that defendants Albertson and Cormany were able to buy so many nearly new cars from a small dealer, within so short a time, was sufficient to put them on inquiry as to the source of that supply. It seems to us obvious that the conditions found by defendants in Overby's place spelled dishonesty.

Defendant Albertson's former wife testified that she talked with Albertson about buying a car at the same time the cars in question were being purchased from Overby. She said that he told her:

"It wasn't any use for me to buy a car,

and that he would get me a car, and all I would have to do would be to take it from Indiana to Ohio and get a license and then from Ohio to Michigan and get a license and then bring it back to Indiana and get a license, and an Indiana title;" that would be a stolen car; that he was dealing in stolen cars and that he was in partnership with a man by the name of Cormany; that in 1924 he came to see her about storing "hot" cars in her garage; and that "hot" cars meant cars recently stolen.

The witness Bloom was a salesman for Albertson and Cormany, and the conversation he had was, he thought, with Cormany, in the presence of Albertson, who said:

"They were getting these cars from Chicago and no doubt they might get some stolen cars, but that I had nothing to worry about, as they paid their money for the cars and had title for them, and that I was all right in selling them. After that, I continued to work for them a short time."

It is urged that Bloom's testimony related to a time after the inquiries as to the stolen automobiles became public and to sales which he had theretofore made, and not to sales to be afterwards made by him. Bloom's testimony is not very strong, but, when considered in connection with the kind and number of automobiles purchased, tends to show that Albertson and Cormany were willing to rely upon the fact that somebody had given them title, without making inquiry as to the source of that title, no matter how strong were the evidences of a tainted source.

We are of opinion that there was sufficient evidence before the jury to justify the conviction, and that the judgment of the District Court should be, and it is, affirmed.