## UNITED STATES v. BRAND et al.*
### No. 133.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1935.

*Writ of certiorari denied 56 S. Ct. 381, 80 L. Ed. ——.

Meyer Kraushaar, of New York City, for appellant.

F. W. H. Adams, U. S. Atty., of New York City (Seymour Miller Klein, Asst. U. S. Atty., and Richard J. Burke, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Brand, the appellant, was indicted with Oaklander, Shapiro, Doubleday and Schwartz for transporting in interstate commerce a stolen motorcar, with an appending count for conspiracy. Doubleday and Schwartz pleaded guilty and turned state's evidence; the other three stood trial and were convicted; Brand alone has appealed. The prosecution proved that Brand had sold a car to Doubleday in New York through the mediation of Schwartz, and that the car had been stolen; the only

606

issues in substantial dispute were whether Brand knew that the car had been stolen, and whether he was party to its transportation to Connecticut, where Doubleday lived. On the first issue Schwartz testified that Brand had told him that the car was "hot," i. e., stolen, and Doubleday, that Brand had assured him that two purchasers of other cars had had no "trouble" with them. He lent Doubleday the plates from a car of his own and got new plates for him through Oaklander and Shapiro. To do so he used a bill of sale purporting to be from Seaman and Cohen, but signed in the name of Brand's brother-in-law, Langer, a discrepancy which he did not satisfactorily explain. Moreover, he told Doubleday to say that the car came from Seaman and to "let them find out" who Seaman · was. The registration was for another year than the slips which were given Doubleday to keep. Finally, it was proved that six months before Brand had sold another stolen car. The whole of this evidence certainly made an issue of the scienter.

On the second issue, as we have just said, Brand agreed to procure new plates for Doubleday through Oaklander and Shapiro, and until then he was to let him use plates taken from his own car. He also detailed Schwartz to drive the car into Connecticut and told Doubleday to deduct ten dollars from the price and give it to him for this service. Finally he arranged that an assistant should drive Schwartz's car out of the city, Doubleday being unused to city driving, after which Doubleday was to follow Schwartz and the stolen car. As to this second issue, it was held in Overby v. U. S., 23 F.(2d) 908 (C. C. A. 7), that the seller becomes a principal in the transportation, if he sells a stolen car with knowledge that the buyer will take it to another state. Cf. Cook v. Stockwell, 25 Cox's C. C. 49. We need not here decide whether this is the right doctrine, because Brand, as we have shown, actively intervened to assist the very movement of the car to Connecticut. It is true that the judge charged the jury in accordance with Overby v. U. S., supra, but no objection was made, and the only question before us is of the sufficiency of the evidence. .

The other supposed errors relate to the incidents which arose during the trial. The first is the admission on the scienter of the sale by Brand of the other stolen car to one Ross. The argument is based on the doctrine of Regina v. Oddy, 2 Denison C. C. 272, Copperman v. People, 56 N. Y. 591, and Edwards v. U. S., 18 F. (2d) 402 (C. C. A. 8), that evidence of the receipt of other stolen goods is not admissible unless the prosecution proves that the accused knew them to have been stolen. At least in this circuit there is no such doctrine. Sapir v. U. S. (C. C. A.) 174 F. 219. We later did indeed give an obiter assent to Regina v. Oddy, supra, in Wolf v. U. S. (C. C. A.) 290 F. 738, but the evidence then before us was clearly inadmissible anyway; and the authority of the case is to be understood as limited to the facts. Means v. U. S. (C. C. A.) 6 F.(2d) 975, 979. Nakutin. v. U. S., 8 F. (2d) 491 (C. C. A. 7), states the proper doctrine, for the competence of such evidence does not depend upon conformity with any fixed conditions, such as upon direct proof of scienter, or the identity of the thief in the earlier instance, or of the victim, or the number of instances in which the accused received stolen goods, or the similarity of the goods stolen. These are all relevant circumstances but not necessary constituents. Nor can we see any basis for distinguishing between knowledge and intent in such cases. The judge must decide each time whether the other instance or instances form a basis for sound inference as to the guilty knowledge of the accused in the transaction under inquiry; that is all that can be said about the matter. If, for example, the subject of the indictment were the last of a series of purchases from the same thief, the earlier purchases would be competent, for thieves are unlikely to risk repeated transactions with innocent buyers. Again if a number of purchases were of goods of the same kind, mere coincidence is less probable as their number increases. Although in the case at bar we are concerned with only a single earlier instance, though of goods of the same kind, we need not decide the general question so presented, because it seems to us that motorcars stand somewhat apart. They are registered in public offices and carry with them their identifying numbers, which cannot be changed except by formal application upon written bills of sale. A properly circumspect buyer will inquire as to the earlier owner, and the theft will be disclosed unless the thief has succeeded in getting the car registered in his own name, and new plates issued. Those facts are

peculiarly within his knowledge, and he should satisfy the judge that the thief procured this protective disguise, or it would seem enough that the car is stolen. However, whether that be true, in the case at bar there was more from which to infer that Brand had guilty knowledge. The only bill of sale which, according to Ross, Brand gave him was in the name Scheinman, which Brand assumed for the purpose. Brand denied this; he said that the Scheinman bill was the second one, and that he gave it to Ross because Ross wished to increase the apparent value of the car. He had even the hardihood to deny that he had read the affidavit used on registration, insisting that Ross presented it to him some four weeks later. If the judge believed Ross, he might admit the evidence even though it were a condition that Brand had guilty knowledge.

The next question is as to the admission of the minutes of testimony given before the grand jury by one, Cohen, a witness whom Brand brought from prison to the trial, but did not call. The incident arose as follows: Brand testified that he had bought Doubleday's car from Seaman and Cohen. In answer to a question by a juror, he said, "Cohen is in jail right now; he is up in Sing Sing. In fact they had him here every day." The prosecutor retorted, "Not at all. Brand's attorney had him here," to which Brand answered, "That is right." So the matter stood throughout that day, but on the next morning Brand called the prosecutor himself to the stand, and asked whether he had not "brought down" Cohen. The answer was that Cohen had "testified under oath," and that the prosecutor had seen him "in the grand jury and in my office." Further examination being blocked, the prosecution then offered Cohen's testimony before the grand jury to rebut the inference that it had been favorable to Brand; its admission is the error complained of. Thus, Brand first tried to make it appear that the prosecution had brought Cohen to the trial, which was false, and then that it had examined him before the grand jury, which was true. The purpose of the second effort was apparent; it was to lead the jury to suppose that what Cohen had said to the prosecutor and to the grand jury was injurious to the prosecution and had been suppressed for that reason, which was false, as an examination of the min-

utes shows. Whether this was a deliberate effort to mislead the jury, or merely a reckless and irresponsible assertion, does not appear; but in either case it was an effort inferentially to establish Brand's innocence by Cohen's testimony; it could have had no other possible purpose. Thus it was Brand who introduced hearsay, though indirectly, and the only way in which it could be met was by proving what that testimony really had been. For what conceivable reason such a trick should be allowed to succeed we are not advised. These are the only matters deserving discussion; the case was throughout conducted with moderation and fairness, and the evidence established the guilt of the accused beyond peradventure.

Judgment affirmed.