**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Guy Rufus HUDDLESTON,
Defendant-Appellant.**

**No. 85–1938.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1986.

Decided Feb. 20, 1987.

Rehearing and Rehearing En Banc
Denied April 30, 1987.

Don Ferris, Ann Arbor, Mich., for defendant-appellant.

Phyllis M. Golden, Detroit, Mich., for plaintiff-appellee.

Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

On Petition for Rehearing. The appellant, Guy Rufus Huddleston, was convicted on one count of a two count indictment charging him with having violated 18 U.S.C. §§ 659 and 2315 by possessing and selling certain stolen videotapes. We reversed the conviction, in a decision reported at 802 F.2d 874 (6th Cir., 1986) holding that evidence of prior misconduct of a similar nature should not have been admitted in the absence of clear and convincing proof that the goods involved in the prior transaction were stolen. The government has petitioned for rehearing. That petition is granted, and in light of the recent decision of another panel of this court in *United States v. Ebens*, 800 F.2d 1422 (6th Cir. 1986), we now conclude that the clear and convincing evidence standard does not govern the admissibility of "similar acts" evidence sought to be admitted under Fed.R. Evid. 404(b). Applying the preponderance of the evidence standard adopted in *Ebens*, we cannot say that the district court abused its discretion in admitting evidence of the similar acts in question here. Resolving the other issues raised by Appellant Huddleston in favor of the government, we shall affirm the judgment of the district court.

## I. *Evidence of Prior and Subsequent Transactions*

As stated in our earlier opinion, Mr. Huddleston challenges the admission of evidence that he had been involved in the sale of certain television sets at $28 each and the attempted sale to an FBI agent of certain stolen appliances. Federal Rule of Evidence 404(b) provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

When a court considers admitting such evidence, a two-step analysis must be undertaken. First, the court must decide whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b). *United States v. Dabish,* 708 F.2d 240, 242 (6th Cir.1983). If so, the court must consider whether the probative value of the evidence is outweighed by its potential prejudicial effect. *Id.*

The evidence challenged by Mr. Huddleston, including the evidence of his prior dealings in $28 television sets, was admitted, as the trial court instructed the jury, only for whatever bearing it might have on "Defendant's intent, plan, knowledge, or absence of mistake or accident in this case." The government contended that Mr. Huddleston had been engaged in a pattern of illegal activity, and that this tended to prove he knew the videotapes were stolen.

The evidence of Mr. Huddleston's other activities could reasonably be thought to have a high probative value. The televisions and the Memorex tapes both came from the same supplier, a truckdriver, and when the goods were presented to him, Mr. Huddleston did not ascertain what their source was, nor did he ask to see the truckdriver's bill of sale. Both the television sets and the tapes were sold at prices well below their value, and, in the case of the tapes, below the cost of manufacture. Other goods handled by Mr. Huddleston were shown to have been stolen, and a tape recording confirmed the testimony of the FBI agent that Mr. Huddleston referred to some of them as "hot." Taken as a whole, the evidence strongly indicated, as the government argued, that appellant was engaged in a pattern of illegal activity.

The evidence relating to the television sets was no more prejudicial than that relating to other merchandise supplied by the truckdriver, and the trial judge's charge to the jury minimized any risk of prejudice:

"You have heard evidence of the defendant's possession of goods other than the tapes involved in this case.

The defendant is not on trial for activities pertaining to any goods other than the tapes.

This evidence is admitted only as it may bear on defendant's intent, plan, knowledge, or absence of mistake or accident in this case.

It is not to be used by you to prove the character of the person to show that he acted in conformity with that character."

■ There is conflict among the circuits as to whether the government must prove by "clear and convincing" evidence that the defendant engaged in the prior bad act. In *United States v. Leonard,* 524 F.2d 1076, 1091 (2d Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976), the Court of Appeals for the Second Circuit held, in an opinion written by Judge Friendly, that if "the aggregate of the evidence" is sufficient to permit a finding, beyond reasonable doubt, of criminal intent as to the crime charged, a "preponderance [of the evidence] standard is sufficient" for the subsidiary facts offered to establish such intent. Judge Friendly said that the contrary view set forth in cases such as *United States v. Broadway,* 477 F.2d 991, 995 (5th Cir.1973), "appears to rest on a misconception." 524 F.2d at 1090. This court has now endorsed Judge Friendly's view, citing *Leonard* in support of the proposition that "[c]ourts may admit evidence of prior bad acts if the proof shows *by a preponderance of the evidence* that the plaintiff did in fact commit the act." *United States v. Ebens,* 800 F.2d 1422, 1432 (6th Cir.1986) (emphasis supplied).

In a carefully reasoned opinion handed down by the Court of Appeals for the Fifth Circuit, sitting *en banc* soon after the Fed-

eral Rules of Evidence became effective, that court also adopted Judge Friendly's view and overruled *United States v. Broadway,* 477 F.2d 991, *supra. United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Noting that the Federal Rules of Evidence "place greater emphasis on admissibility of extrinsic offense evidence" than the Supreme Court had done earlier, the *Beechum* court held that:

> "The [trial] judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense, nor need he require the Government to come forward with clear and convincing proof. [Footnote omitted.] The standard for the admissibility of extrinsic offense evidence is that of Rule 104(b): 'The preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist.' 21 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5054, at 269 (1977)." 582 F.2d 898, 910 n. 13 & 913 (5th Cir. 1978).

The logic of the *en banc* decision in *Beechum* corresponds to that applied by Judge Learned Hand in *United States v. Brand,* 79 F.2d 605 (2d Cir.1935), *cert. denied,* 296 U.S. 655, 56 S.Ct. 381, 80 L.Ed. 466 (1936). In *Brand,* which affirmed a conviction for transporting a stolen automobile, the court rejected the doctrine "that evidence of the receipt of other stolen goods is not admissible unless the prosecution proves that the accused knew them to have been stolen." *Id.* at 606. We are disposed to follow these well-reasoned decisions in preference to the contrary view adopted, initially, in some other circuits before the Federal Rules of Evidence came into existence. The contrary view seems to have been based on concerns now dealt with adequately in Rule 403 of the Federal Rules of Evidence.

Even if the trial court did err in this case by letting the jury know about the television sets, the error was harmless. One can say here, "with fair assurance, after pondering all that happened without strip-ping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The "harmless beyond a reasonable doubt" standard announced in *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), dealt only with error of constitutional dimension, and any erroneous evidentiary ruling in this case was clearly not of constitutional magnitude.

## II. *Jury Instruction on Character Evidence*

■ Mr. Huddleston next contends that the district court committed reversible error by failing to instruct the jury that character evidence, when considered with other evidence, may create a reasonable doubt as to a defendant's guilt. Although the court was required so to instruct the jury, *Edgington v. United States,* 164 U.S. 361, 364–65, 17 S.Ct. 72, 73, 41 L.Ed. 467 (1896), we believe that the district court adequately met this responsibility in charging that the jury should consider the character evidence along with all other evidence in determining whether the prosecution had sustained its burden of proving guilt beyond a reasonable doubt.

## III. *Impeachment of Witness With 13–Year–Old Misdemeanor Conviction*

Mr. Huddleston contends that the district court erred in admitting evidence of the prior misdemeanor conviction of witness Alphonse Lewis, Mr. Huddleston's business associate. Mr. Lewis testified about his investigation of the *bona fides* of the truck-driver who supplied the television sets and the videotapes, and he testified that he satisfied himself that the televisions were not stolen and that he so informed the appellant. Mr. Lewis also testified that the truckdriver presented him "a so-called bill of lading" for the television sets, but that he could not find it at the time of trial.

At the end of the cross-examination of Mr. Lewis, the court allowed the government to ask whether Mr. Lewis had ever been convicted of a crime. Mr. Lewis admitted that he had been convicted of a misdemeanor for not filing an income tax return thirteen years earlier. After the jury retired for the day, the trial judge admonished the prosecuting attorney for impeaching the witness with a misdemeanor conviction of such ancient vintage. The judge said that if he had known the conviction was a mere misdemeanor, he would not have allowed the question.

Federal Rule of Evidence 609 provides in part as follows:

"(a) **General rule.** For the purpose of attacking the credibility of a witness, evidence that he had been convicted of a crime shall be admitted ... but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

■ No written notice was given here, but Mr. Huddleston does not deny that the government was unaware that Mr. Lewis was to be called as a witness until a few minutes ahead of time. Advance written notice of the government's intent to impeach Mr. Lewis was therefore not feasible. Mr. Huddleston was aware of the conviction, moreover, and did not object to the lack of written notice. The failure to give written notice was not fatal to the government.

■ In deciding to admit, under Rule 609(a)(1), what it thought would be evidence of a felony conviction, the court necessarily determined that the probative value of the evidence outweighed its prejudicial effect. The court apparently would have struck that balance differently had it known the conviction was for a misdemeanor, and that would have made the evidence inadmissible under Rule 609(a)(1). We would have thought, however, that when an attorney (which Mr. Lewis was) has been convicted of failing to file a federal income tax return, the crime could reasonably be said to have "involved dishonesty" and thus be admissible without more under Rule 609(a)(2).

In any event, we think that if it was error to admit evidence of Mr. Lewis' conviction, the error was harmless. In most of the cases dealing with evidence of prior criminal convictions, it was the defendant himself who was so impeached. Any prejudice to the defendant is normally greater where the defendant's own character is being attacked, and the prejudice to Mr. Huddleston here seems slight.

Finally, Mr. Huddleston did not let the court know ahead of time that the conviction was for a misdemeanor, did not clearly object to admission of the evidence, and did not ask that the jury be instructed to disregard the evidence. Mr. Huddleston argues on appeal that the district court should have struck the testimony *sua sponte* or instructed the jury—again on the court's own initiative—to consider the testimony only as it related to Mr. Lewis' credibility. We do not find these arguments persuasive.

### IV. *Venue*

Finally, Mr. Huddleston contends that venue was improper in the Eastern District of Michigan as to the first count, which charged him with selling stolen property. Although he was acquitted on that count, Mr. Huddleston contends that the fact that the jury found he knowingly possessed stolen tapes several days later indicates a compromise verdict and suggests he might have been acquitted had he been charged with only one count.

We do not reach the venue question because we find no reason to suppose that the first count affected the jury's deliberations with respect to the second count. The jury could have determined that Mr. Huddleston learned that the tapes were stolen only after he had sold some of them. His subsequent statement to the FBI Agent that some of the goods he was attempting to sell were "hot" provides a measure of support for that belief.

Our decision of October 8, 1986, is VACATED, and the judgment of the district court is AFFIRMED.