**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Henry VANCE, Defendant–Appellant.**

No. 87–6276.

United States Court of Appeals,
Sixth Circuit.

Argued May 10, 1988.

Decided April 4, 1989.

Rehearing and Rehearing En Banc Denied June 6, 1989.

See also, 6th Cir., 851 F.2d 166.

Frank E. Haddad, Jr. (argued), Louisville, Ky., J. Randall Reinhardt, Lexington, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Barbara Edelman, James E. Arehart (argued), Lexington, Ky., for plaintiff-appellee.

Before JONES and RYAN, Circuit Judges, and GIBSON,* District Judge.

RYAN, Circuit Judge.

Henry Vance appeals his conviction of conspiring to transport a firearm in interstate commerce with knowledge that it was to be used to commit murder, 18 U.S. C. § 371, and of transporting a firearm in interstate commerce with knowledge that it was to be used to commit murder, 18 U.S. C. § 924(b). On appeal, Vance argues that he is entitled to a new trial on the ground that the district court committed an abuse of discretion by admitting into evidence, under Fed.R.Evid. 404(b), evidence of prior bad acts allegedly committed by Vance. Vance also argues that the district court committed an abuse of discretion by admitting certain expert testimony, and that prosecutorial misconduct denied Vance a fair trial.[1] Finding no reversible error, we affirm Vance's conviction.

This case arose from the murder of Florida State Attorney Eugene Berry by Bonnie Kelly on January 16, 1982. Berry was the prosecutor in the 1981 Florida trial of Bonnie Kelly's husband, Wallace M. ("Mike") Kelly, in which Mike Kelly was convicted and sentenced to imprisonment

---

* The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation.

1. In his appellate brief, Vance also argued that this court should reconsider its decision in *United States v. Huddleston*, 811 F.2d 974 (6th Cir. 1987) (*per curiam*), which adopted a preponderance of the evidence standard for the admission of prior bad act evidence under Fed.R.Evid. 404(b). Vance argued that proof of prior bad acts should be shown by clear and convincing,

not merely preponderant, evidence. However, in a recent decision unanimously affirming *Huddleston,* the Supreme Court made clear that prior bad act evidence is admissible under Fed. R.Evid. 404(b) upon a showing by a preponderance of the evidence that the defendant committed the act. *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). We therefore decline Vance's request to reconsider *Huddleston.*

on drug charges. The indictment of Vance charged that he, Bonnie Kelly, and Stephen Vance Taylor (no relation to Henry Vance), who was scheduled to be prosecuted by Berry on drug charges, planned Berry's murder between late December 1981 and January 16, 1982, and that Vance gave Bonnie Kelly the handgun she used to murder Berry at Berry's home in Florida. The indictment also alleged that Vance assisted Taylor and Bonnie Kelly in fabricating alibis for Berry's murder by helping Taylor stage a car accident in Kentucky on the date of the murder, and by telling law enforcement officials that he had seen Bonnie Kelly in Kentucky on that date. Bonnie Kelly was convicted in a Florida court of murdering Berry and she was sentenced to life imprisonment; Taylor pleaded guilty to second-degree murder and was sentenced to ninety-nine years' imprisonment.

Before Vance's trial, the prosecution moved for a ruling on the admissibility under Fed.R.Evid. 404(b) of evidence of the following prior bad acts which Vance allegedly committed or in which he was allegedly involved:

(1) Use of illegal drugs in the early 1970's;

(2) Production of fake LSD pills by Vance and Bonnie Kelly to replace pills stolen by Vance from the sheriff's office;

(3) Theft of a machine gun from the sheriff's office;

(4) Theft of drugs from drug stores by Mike Kelly and Bonnie Kelly;

(5) Detonation of a bomb on the property of a Kentucky judge in 1972 by Vance, Mike Kelly, Bonnie Kelly, and a fourth person;

(6) Theft of a machine gun from a police department impoundment lot in 1980 by Vance, Mike Kelly, and Bonnie Kelly;

(7) Illegal manufacture of gun silencer parts in 1981 by Vance and Mike Kelly;

(8) Production of false identification pieces by Mike Kelly and Bonnie Kelly, including pieces used by Vance;

(9) Forgery of sheriff's signature by Vance in 1973 to order police weapons.

The prosecution's rationale for the admissibility of evidence of these alleged acts was that the acts were relevant as tending to prove Vance's motive for assisting Bonnie Kelly in the murder of the prosecutor of Mike Kelly. The prosecution contended that in order for the jury to understand how Vance, a citizen of apparent standing,[2] could possibly be motivated to assist Bonnie Kelly in the murder of prosecutor Berry, it had to be aware of the long-standing relationship between Vance and the Kellys during which the three of them had been involved in the myriad criminal activities alleged.

In a fourteen-page memorandum opinion and order, the district court ruled on the admissibility of evidence of the alleged prior bad acts. The court held that evidence of acts Nos. 1 and 4—Vance's alleged drug use and the Kellys' alleged drug thefts—was inadmissible because it was unfairly prejudicial, and stated: "Although such evidence is somewhat probative of the motive of Vance to act in connection with the Kellys, the prejudicial effect of the extensive drug use outweighs any use of the evidence." The court ruled that evidence of act No. 9, Vance's alleged forgery of an order for police weapons, was inadmissible because Vance allegedly committed this act by himself; therefore, it was not probative of his relationship with the Kellys.

The district court ruled that evidence of the six other alleged prior bad acts was admissible because the evidence was probative as to Vance's motive to assist Bonnie Kelly in the commission of Berry's murder, and was not unfairly prejudicial. The court stated:

[T]he government desires to *set the scene* for the *motive* of the defendant, a man of social and political prominence,

2. Vance had served in various capacities in Kentucky government, including as deputy sheriff, legislative aide, and assistant to the Governor.

At the time of Berry's murder, Vance was an aide to the Majority Leader of the Kentucky House of Representatives.

to supposedly supply a weapon to a confederate to murder a state prosecutor. Much of the government's prior act evidence attempts to show *why* the defendant would risk this high social and political prominence by becoming involved in a murder. Any murder! The alleged criminal relationship between the unindicted co-conspirators and Vance is probative on the issue of *motivation* in the transfer of the pistol. There is little question that much of the prior act evidence, such as the furnishing of guns to the Kellys and the creation of "fake" LSD by the defendant and Bonnie Kelly is prejudicial to the defense. However, the burden is on the Court to determine if this prejudice is *unfair.* The jury must decide whether to believe the testimony of the defendant or the testimony of the Kellys. If the jury does not believe that Vance gave the gun to Bonnie Kelly to commit a murder,[3] then they will not believe the testimony of the Kellys as to prior bad acts. Either all of the evidence about the murder weapon and the prior acts will be believable or all the evidence will be rejected by the jury.

---

[3] The motive of giving the gun for this illegal purpose is in sharp contrast to any innocent reason for furnishing the weapon.

Evidence of six alleged prior bad acts was therefore admitted at Vance's trial. After his conviction, Vance moved for a new trial, primarily on the ground that the evidence of alleged prior bad acts was inadmissible under Fed.R.Evid. 404(b) and 403. In a nineteen-page memorandum opinion and order the district court considered and rejected Vance's motion on the same rationale as the court's pretrial decision to admit the evidence: the evidence was probative as to Vance's motive for assisting the Kellys, and it was not unfairly prejudicial. This appeal followed.

## I.

Vance's primary argument on appeal is that the district court erred in admitting evidence of alleged prior bad acts under Fed.R.Evid. 404(b). Rule 404(b) provides:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rationale underlying the exclusion of bad acts evidence is *not* that such evidence is irrelevant.

[O]n the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948). By limiting the admission of bad acts evidence, Rule 404(b) therefore helps secure the presumption of innocence and its corollary "that a defendant must be tried for what he did, not for who he is." *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir.1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

Rule 404(b), however, provides only that bad acts evidence is not admissible to prove character or criminal propensity; such evidence may be admissible for other purposes, *"such as,"* but not limited to, those listed in the rule. This court has noted that Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985).

In determining whether bad acts evidence is admissible under Rule 404(b), a court must engage in a two-step analysis. First, the court must decide whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b). If so,

the court must consider whether the probative value of the evidence is outweighed by its potential prejudicial effect.

*United States v. Huddleston,* 811 F.2d 974, 976 (6th Cir.1987) (*per curiam;* citations omitted), *aff'd,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In determining the admissibility of bad acts evidence under Rule 404(b), a trial judge is accorded "broad discretion." *United States v. Ebens,* 800 F.2d 1422, 1433 (6th Cir.1986); *United States v. Fraser,* 709 F.2d 1556, 1559 (6th Cir.1983).

In this case, the district court engaged in the Rule 404(b) two-step analysis and found first that the evidence of the alleged bad acts in question was offered for a proper purpose—to show Vance's motive for assisting Bonnie Kelly in the murder of prosecutor Berry. The court then found that the evidence did not unfairly prejudice Vance. On appeal, Vance disputes both of these findings: He claims that (1) the evidence went to his character and propensity to engage in criminal conduct, not to "motive"; and (2) in any event, the prejudicial effect of the extrinsic evidence outweighed any probative value. We are persuaded that the district court did not commit an abuse of discretion in admitting the evidence of the six prior bad acts.

First, we find that the prior bad acts evidence was probative of Vance's motive, a permissible purpose for admission of the evidence under Rule 404(b) and a material issue in the case. In order for the prosecution to prove its case, it had to show why this well-known citizen of considerable public standing and prominence, and a former law enforcement officer, could have been motivated to assist Bonnie Kelly in the commission of Berry's murder. The importance of motive to the case was recognized by defense counsel, who stated in closing argument:

> They haven't got any motive. There is no motive for Henry Vance to want that prosecutor killed.... No motive on his part.
>
> When there is no motive, ladies and gentlemen, it's hard to prove a reason

why a person would want to commit a crime and there's a likelihood that the person would not commit that crime, a great likelihood. So what do they do to try to fill in that gap. They try to say that the motive in this case is friendship. Because he is a friend to Mike Kelly, he's going to get a gun, give it to—volunteer the gun.

Tr. 8–68. In showing the specific nature of Vance's relationship with the Kellys—by showing alleged prior bad acts he committed with them—the prosecution sought to show that Vance indeed might have been motivated to do all he could to assist the Kellys, including assisting Bonnie Kelly in the murder of the prosecutor of Mike Kelly. *Cf. United States v. White,* 788 F.2d 390 (6th Cir.1986).

Second, we find that the district court did not commit an abuse of discretion in holding that the probative value of the evidence of alleged prior bad acts was not outweighed by its potential prejudicial effect. A district court is granted "very broad" discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence—a Fed.R.Evid. 403 inquiry. *United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982). Thus, whether this court might have reached a different conclusion in a trial *de novo* is irrelevant if the district court acted within its discretion. *Id.*

An important indication of probative value of evidence is the prosecution's need for the evidence in proving its case. *United States v. Benton,* 637 F.2d 1052, 1057 (5th Cir.1981). In this case, the prosecution undoubtedly had a strong need for the evidence of the alleged prior bad acts—without evidence of the specific nature of Vance's relationship with the Kellys, the prosecution would have been hard-pressed to present a credible case explaining why a citizen of Vance's prominence would ever have become involved with the Kellys in *any* crime, let alone a murder. As for the prejudicial effect of the bad acts evidence, we note that evidence of prior bad acts is almost always prejudicial to the defendant. At issue, however, is whether such evi-

dence is *unfairly* prejudicial to the defendant such that

[t]he jury's decision will be based upon improper factors, notably the character and past conduct of the accused, rather than upon the evidence presented on the crime charged. The prejudicial effect of the evidence may be reduced by the manner in which the evidence is introduced, *e.g.*, elimination of inflammatory or unnecessary details from the presentation, and by cautionary instructions from the trial judge.

*Id.* In this case the district court excluded evidence it considered inflammatory, including Vance's alleged drug usage, and the court gave a cautionary instruction to the jury that it only consider the evidence of prior bad acts on the issue of motive. We find no abuse of discretion by the district court in its finding that the probative value of the bad acts evidence was not outweighed by its potential prejudicial effect.

The district court made a reasoned determination that some, but not all, of the prior bad acts evidence offered by the prosecution was probative of Vance's motive, a material issue, and that the probative value of this evidence was not outweighed by its prejudicial effect. We find no abuse of the broad discretion accorded a trial court in making this determination, and we affirm the district court's admission of prior bad acts evidence under Fed.R.Evid. 404(b).

## II.

Vance challenges the district court's admission into evidence of testimony of expert witness Andrea Hillyer, Assistant General Counsel to the Governor of Florida, as to the operation of clemency in Florida and her opinion of the unlikelihood that Bonnie Kelly or Stephen Vance Taylor would be granted clemency in exchange for their testimony at Vance's trial. The admissibility of expert testimony is governed by Fed.R.Evid. 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness quali-

fied as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This court has established a four-part test for determining admissibility of expert testimony under Rule 702: (1) a qualified expert; (2) testifying on a proper subject; (3) in conformity to a generally accepted explanatory theory; (4) the probative value of which outweighs any prejudicial effect. *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir.1977). Vance argues that Hillyer's testimony as to the operation of clemency in Florida was not on a proper subject and therefore failed part two of the test.

A district court has broad discretion to admit expert testimony under Rule 702: "Traditionally, the permissible limits of expert testimony are left to the sound discretion of the District Court and the decision to permit expert testimony will not be disturbed on appeal unless it is manifestly erroneous." *United States v. Brown*, 557 F.2d 541, 556 (6th Cir.1977). Because defense counsel first raised the issue of clemency by implying that Bonnie Kelly and Stephen Vance Taylor might obtain clemency in exchange for their testimony at Vance's trial, we cannot say it was manifestly erroneous to allow the prosecution to introduce Hillyer's testimony as to the unlikelihood of such an event in light of past practice. We affirm the district court's admission of Hillyer's testimony.

## III.

Vance's final argument before this court is that prosecutorial misconduct and improper argument denied him a fundamentally fair trial. Based on extensive review of the record, we conclude that alleged prosecutorial misconduct was not "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial," *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir.1986), nor were alleged improprieties in the prosecution's argument to the jury "so gross as probably to prejudice the defendant." *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir.1988). Accordingly,

we hold that any improper conduct or argument by the prosecution constitutes harmless error and does not warrant a new trial.

AFFIRMED.

BENJAMIN F. GIBSON, District Judge, dissenting.

The majority today allows the admission of evidence of prior crimes allegedly committed by defendant with Bonnie and Mike Kelly in order to prove "motive." However, in my judgment, the majority both misconstrues and misapplies Rule 404(b). As a result, this evidence may well have influenced the jury into inferring the defendant's guilt from his propensity for crime. Because this violates both the terms of Rule 404(b) and its underlying policies, I dissent.

Motive has been defined as "the reason that nudges the will and prods the mind to indulge the criminal intent." *United States v. Benton,* 637 F.2d 1052, 1056 (5th Cir.1981) (citing *United States v. Beechum,* 582 F.2d 898, 912 (5th Cir.1978)). The prior crimes testimony was not evidence of motive to commit the crime for which the defendant was convicted. Under Rule 404(b), motive must indicate a causal relationship between the prior bad act and the charged criminal act. *See United States v. Gonzalez,* 610 F.Supp. 574, 576 (D.P.R. 1985); E. Imwinkelreid, *Uncharged Misconduct Evidence* § 3.15, at 36 (1984). The articulated motive in this case tends to eliminate a reason for not committing a crime, rather than "prodding the mind to indulge the criminal intent."

Moreover, the prior crimes evidence is not even probative.[1] The government simply wanted to show that because of past criminal activity, the likelihood of present guilt was strong. Of course, this is pure disposition evidence in its most egregious form, and is inadmissible under Rule 404(b).

The majority, citing *Benton,* 637 F.2d at 1057, suggests that the prior crimes evidence is probative because of "the prosecution's need for the evidence in proving its case." In *Benton,* there was a specific showing that demonstrated how the prior crimes created the motive for the charged crime. The prosecution's legitimate need for evidence on an issue might reflect that issue's materiality, but such need cannot, by itself, warrant the admission of otherwise inadmissible evidence. To hold otherwise would permit the admission of evidence by the government by simply demonstrating a need for such evidence. However, without a rational connection between evidence and the proposition that the government needs to prove, the evidence cannot be admissible under Rule 404(b).

Furthermore, the prior crimes evidence was remote in time. Most of these events occurred in the early seventies and none occurred later than 1981. The district court noted that these events were prejudicial, but found that they were not unfairly prejudicial. However, there is unfair prejudice in my opinion when the jury's attention is unduly focused on the defendant's propensity for crime. Fifteen of the witnesses in this case testified about the defendant's prior criminal acts. Over two hundred pages of trial transcript were used to document these acts. The prosecution even urged the jury to infer guilt from defendant's association with criminals.[2]

Essentially, the defendant was tried for his previous criminal acts. Even under the majority's liberal construction of "motive,"

---

1. For example, there is no rational connection between defendant's production of fake LSD in the seventies and defendant's alleged assistance in Berry's murder.

2. The government made its position clear in closing argument:

Henry Vance was just like Mike Kelly. He was his partner in crime.... When you consider what Mike Kelly was, and when you consider that these people were his friends, not only Henry Vance, but you heard about

Drew Thornton, you heard about what kind of fellow he was, ... How do you get friends like that? How does that happen? How do you surround yourself with people like that? Not by accident. Not by mistake. It happens by design. It happens by the fact that you surround yourself with people that are like you. We all do. We all associate with people that are like ourselves.

8 Trial Transcript at 31–32.

Rule 403 would still dictate inadmissibility. Without a doubt, the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice."

For these reasons, I dissent.