67 F.3d 300
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward Joseph FARRIS, Defendant-Appellant.
 No. 94-3920.
 United States Court of Appeals, Sixth Circuit.
 Oct. 5, 1995.
 
 Before: WELLFORD, MILBURN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appeals his convictions for unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a)(2), collection of extensions of credit by extortionate means in violation of 18 U.S.C. Sec. 894(a)(1), possession of an unregistered firearm silencer in violation of 26 U.S.C. Secs. 5861(d) and 5871, and unlawful possession of a firearm silencer without a serial number in violation of 26 U.S.C. Secs. 5861(i) and 5871. On appeal, the issues are (1) whether defendant waived his right to challenge on appeal the sufficiency of the evidence supporting his convictions on counts six, seven, and eight of the indictment because he failed to specify lack of proof of possession as a ground for his motion for judgment of acquittal under Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 29; (2) whether the evidence demonstrating that defendant possessed firearms and ammunition, which were in or affected interstate commerce, was sufficient to sustain defendant's convictions for possession by a convicted felon of a firearm and ammunition in counts one, two, three, four, and six of the indictment; and (3) whether the district court violated defendant's Sixth Amendment right to a fair trial and right to confront witnesses against him by overruling his hearsay objection and by denying his motion for a mistrial after certain testimony by the victim about defendant's reputation admitted pursuant to 18 U.S.C. Sec. 894(c). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On May 3, 1994, a federal grand jury returned a second superseding indictment against defendant Edward Joseph Farris. Counts one, two, three, four, and six of the indictment charged defendant with unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a)(2). Count five charged defendant with collection of extensions credit by extortionate means in violation of 18 U.S.C. Sec. 894(a)(1). Count seven charged defendant with possession of an unregistered firearm silencer in violation of 26 U.S.C. Secs. 5861(d) and 5871. Count eight charged defendant with unlawful possession of a firearm silencer without a serial number in violation of 26 U.S.C. Secs. 5861(i) and 5871.
 
 
 3
 A jury trial commenced on July 5, 1994. On July 8, 1994, the jury returned verdicts convicting defendant of all eight counts charged in the indictment. On August 17, 1994, defendant was sentenced to 28 months imprisonment and three years supervised release. This timely appeal followed.
 
 B.
 
 4
 This case involved a series of events that occurred around Youngstown, Ohio, between April and November of 1992. At the trial, the government presented the testimony of eight witnesses. The second witness to testify for the government was Albert Mike, the victim of defendant's efforts to collect extensions of credit by extortionate means.
 
 
 5
 Mike testified that he received a telephone call from defendant in August 1992 after Mike had stopped making payments on debts he owed to Anna Marie Massullo. Mike informed defendant that he had an attorney, and defendant indicated that he would contact Mike's attorney about collecting the debts. Mike stated that he later met with defendant in late September or early October 1992. He testified that defendant told him that he collects money for Massullo and her father Andy Marino, that he was the "last person they come to" to collect their money, and that Mike was "going to get hurt" if the debts were not paid. J.A. 113-14.
 
 
 6
 Mike further testified that as a result of this meeting with defendant, he contacted his attorney Jim Gentile. Mike learned from his attorney that defendant had a reputation. The following examination took place:
 
 
 7
 Q Did you have the occasion to learn whether Mr. Farris had a reputation in the Youngstown area.
 
 
 8
 MR. MANDEL: Objection.
 
 
 9
 THE COURT: Overruled.
 
 
 10
 A Yes, I did. Jim Gentile says you know who you're messing with.
 
 
 11
 MR. MANDEL: Objection.
 
 
 12
 THE COURT: Overruled.
 
 
 13
 A He said you knew who you're messing with. I said I don't know the guy, I've never met him. I've never had any contact with him, why would I. He said this is Ed Farris the bang, bang, bang. I said what do you mean. He said that's the way he works, with a gun.
 
 
 14
 J.A. 118-19. Defendant immediately objected and moved for a mistrial on the basis that the testimony about defendant's reputation was unduly prejudicial and it was hearsay. The district court overruled defendant's motion for a mistrial. The government then presented the remainder of its case.
 
 
 15
 At the close of the government's case, defendant moved for judgment of acquittal under Fed.R.Crim.P. 29. With regard to counts one through four and count six, defendant argued only that the government had failed to prove that defendant's possession of the firearms and the ammunition had affected interstate commerce. As to count seven, defendant argued that the government had failed to prove whether the firearm silencer had been registered prior to the effective date of the statute and that the government had failed to prove that defendant had an obligation to register the firearm silencer. With respect to count eight, defendant argued only that the government had failed to prove whether defendant had applied for permission to obliterate the serial number of the firearm silencer. Defendant did not cite any specific grounds for his Rule 29 motion with respect to count five. The district court denied defendant's Rule 29 motion.
 
 
 16
 Without calling any witnesses or presenting any evidence, defendant rested his case subject to the reading to the jury of the formal stipulations entered into by the parties. Defendant then renewed his previously made Rule 29 motion, and the district court again denied defendant's motion. Subsequently, the stipulations were read to the jury. Defendant stipulated to, among other things, the fact that "all of the pistols and ammunition described in the indictment were manufactured outside of the state of Ohio and traveled in interstate commerce." J.A. 190. The stipulation included specific descriptions of all the firearms, the ammunition, and the firearm silencer underlying counts one through four and counts six through eight of the indictment.
 
 II.
 A.
 
 17
 Defendant argues that the evidence was insufficient to sustain his convictions for possession of a firearm and ammunition by a felon in counts six, seven, and eight of the indictment because the government failed to prove the essential element of possession. The government takes the position that defendant waived his right to challenge on appeal the sufficiency of the evidence supporting his convictions on counts six, seven, and eight because he failed to specify lack of proof of possession as a ground for his motion for judgment of acquittal under Fed.R.Crim.P. 29.
 
 
 18
 "Although specificity of grounds is not required in a Rule 29 motion, where a Rule 29 motion is made on specific grounds, all grounds not specified are waived." United States v. Dandy, 998 F.2d 1344, 1356-57 (6th Cir.1993) (citation omitted), cert. denied, 114 S.Ct. 1188 (1994); see also United States v. Rivera, 388 F.2d 545, 548 (2d Cir.), cert. denied, 392 U.S. 937 (1968). As earlier stated, defendant cited specific grounds for his Rule 29 motion with respect to counts six, seven, and eight. We have thoroughly reviewed the transcript of trial proceedings on that motion and find no mention of the sufficiency of the evidence supporting the fact of defendant's possession (or, for that matter, constructive possession) of the firearms, the ammunition, or the firearm silencer. Therefore, we accept the government's position that defendant waived his right to challenge the sufficiency of the evidence of possession on counts six, seven, and eight. See Dandy, 998 F.2d at 1357. We would point out, however, that even if defendant had not waived his right to challenge the sufficiency of the evidence as to counts six, seven, and eight, there was sufficient evidence of defendant's constructive possession of the firearms, ammunition, and silencer.
 
 B.
 
 19
 In addition, defendant argues that the evidence was insufficient to sustain his convictions for possession by a convicted felon of a firearm and ammunition in or affecting interstate commerce in counts one, two, three, four, and six of the indictment because the government failed to present sufficient evidence demonstrating how the firearms or the ammunition had affected interstate commerce. The government argues that its proof that the firearms were manufactured in a state other than the state in which defendant possessed them was sufficient to show that the firearms affected interstate commerce.
 
 
 20
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)), cert. denied, 476 U.S. 1123 (1986). In reviewing the sufficiency of the evidence in support of a criminal conviction, we must determine "whether the relevant evidence could be accepted by a reasonably minded jury as adequate and sufficient to support the conclusion of guilt beyond a reasonable doubt." United States v. Cooperative Theatres of Ohio, Inc., 845 F.2d 1367, 1373 (6th Cir.1988) (per curiam) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see also United States v. Vincent, 20 F.3d 229, 232-33 (6th Cir.1994). "[W]e will reverse a judgment for insufficiency of evidence only if ... the judgment is not supported by substantial and competent evidence." United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir.1991), cert. denied, 502 U.S. 1035 (1992).
 
 
 21
 In Scarborough v. United States, 431 U.S. 563 (1977), the Supreme Court interpreted the phrase "in commerce or affecting commerce" in the context of Sec. 1202(a) of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, the predecessor statute of 18 U.S.C. Sec. 922(g). See id. at 567-68. The Court held that a felon who possessed a firearm violated the statute as long as the firearm had previously travelled at some time in interstate commerce. Id. at 568-75.
 
 
 22
 The Sixth Circuit has followed the Supreme Court's rationale in interpreting 18 U.S.C. Sec. 922(g). In United States v. Fish, 928 F.2d 185 (6th Cir.), cert. denied, 502 U.S. 834 (1991), we stated:
 
 
 23
 This court has already determined that firearms possessed in a state other than the state of manufacture constitute firearms in or affecting commerce. United States v. Pedigo, 879 F.2d 1315, 1319 (6th Cir.1989) (citing Scarborough v. United States, 431 U.S. 563 (1977)). Therefore, the government's evidence that the firearm was manufactured outside the state of possession is sufficient to prove an interstate commerce nexus....
 
 
 24
 Id. at 186 (parallel citations omitted). Our interpretation is in accord with that of other circuits which have considered whether proof of a convicted felon's possession of a firearm having a past connection to interstate commerce is sufficient to establish a violation of 18 U.S.C. Sec. 922(g). See United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir.), cert. denied, 114 S.Ct. 259 (1993); United States v. Carter, 981 F.2d 645, 647 (2d Cir.1992), cert. denied, 113 S.Ct. 1827 (1993); United States v. Poole, 929 F.2d 1476, 1479 (10th Cir.1991); United States v. Conner, 886 F.2d 984, 985 (8th Cir.1989) (per curiam), cert. denied, 493 U.S. 1089 (1990); United States v. Sherbondy, 865 F.2d 996, 999-1001 (9th Cir.1988); United States v. McCarty, 862 F.2d 143, 145 (7th Cir.1988); United States v. Gillies, 851 F.2d 492, 493-95 (1st Cir.), cert. denied, 488 U.S. 857 (1988).
 
 
 25
 In this case, defendant stipulated that all the firearms, the ammunition, and the firearm silencer described in the indictment had been manufactured outside the state of Ohio and had traveled in interstate commerce prior to the dates of the offenses. Thus, there can be no question that the firearms and the ammunition had a past connection to interstate commerce.[1] See Fish, 928 F.2d at 186. Accordingly, defendant's challenge to the sufficiency of the evidence demonstrating that the firearms and the ammunition had affected interstate commerce has no merit.
 
 C.
 
 26
 Defendant also argues that the district court violated his Sixth Amendment right to a fair trial and right to confront witnesses against him by overruling his hearsay objection and by denying his motion for a mistrial after the alleged prejudicial hearsay testimony by the victim about defendant's reputation. The government argues that the district court properly exercised its discretion in overruling defendant's hearsay objection because the statements were not hearsay since they were not offered to prove the truth of the matter asserted and in denying defendant's motion for a mistrial because the testimony was specifically admissible pursuant to 18 U.S.C. Sec. 894(c).
 
 
 27
 "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence...." United States v. Vance, 871 F.2d 572, 576 (6th Cir.), cert. denied, 493 U.S. 933 (1989). We review a district court's evidentiary rulings for an abuse of discretion. United States v. Taplin, 954 F.2d 1256, 1258 (6th Cir.1992). Likewise, we review a district court's denial of a motion for a mistrial for an abuse of discretion. United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991), cert. denied, 502 U.S. 1112 (1992); see Arizona v. Washington, 434 U.S. 497, 514 (1978). Applying this deferential standard, we cannot say that the district court erred in making the challenged rulings.
 
 
 28
 The statute prohibiting collection of credit by extortinate means, 18 U.S.C. Sec. 894(a)(1), specifically permits the admission of reputation evidence to demonstrate the effect on the intended victim by providing:
 
 
 29
 In any prosecution under this section, if evidence has been introduced tending to show the existence, at the time the extension of credit in question was made, of the circumstances described in section 892(b)(1) ... and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing that words or other means of communication, shown to have been employed as a means of collection, in fact carried an express or implicit threat, the court may in its discretion allow evidence to be introduced tending to show the reputation of the defendant in any community of which the person against whom the alleged threat was made was a member at the time of the collection or attempt at collection.
 
 
 30
 18 U.S.C. Sec. 894(c); see United States v. DeVincent, 632 F.2d 147, 150-51 (1st Cir.), cert. denied, 449 U.S. 986 (1980). The purpose of reputation evidence in loansharking cases is to show the intent of the defendant and the state of mind of the victim. United States v. Dennis, 625 F.2d 782, 800 (8th Cir.1980).
 
 
 31
 Defendant asserts that the testimony by Mike was hearsay which should have been excluded under Federal Rule of Evidence 801. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Thus, a statement is properly admissible when it is not offered to prove the truth of the matter asserted, but is offered to show its effect on the hearer. United States v. Horton, 847 F.2d 313, 324 (6th Cir.1988). In United States v. DeVincent, the First Circuit held that statements by a witness that the defendant "had been in jail for loansharking and was a 'pretty bad guy' " fell within the nonhearsay category of statements offered for their effect on the hearer and were "admissible for their probable effect on the debtor's understanding of the creditor's collection practices, an essential element of the extortionate extension of credit charge." 632 F.2d at 151; see also United States v. Gigante, 729 F.2d 78, 83 (2d Cir.) ("Evidence that the debtor believed the loanshark was connected to organized crime is admissible to show the debtor's belief that the loanshark would use, or had a reputation for using, extortionate means to collect extensions of credit."), cert. denied, 467 U.S. 1206 (1984). Likewise, Mike's testimony that he had heard defendant "works with a gun" was not offered as proof that defendant shot people but rather to show that Mike thought he did and therefore had a reason to fear him and any future contacts with him. See DeVincent, 632 F.2d at 151. Accordingly, Mike's testimony was not hearsay, and it was not excludible on that basis. See Horton, 847 F.2d at 324.
 
 
 32
 Defendant claims that his rights under the Sixth Amendment's Confrontation Clause were violated because there was no way for him to cross-examine the statement by Mike. Where the testimony by a witness does not meet the definition of hearsay, the defendant's Sixth Amendment rights to confront the witness are not implicated. United States v. Williams, 952 F.2d 1504, 1518 (6th Cir.1991); see also United States v. Strickler, No. 92-5217, 1992 WL 310267 at * 1 (6th Cir.1992) (unpublished disposition) (per curiam). In addition, in cases involving collection of credit by extortionate means, reputation evidence is admissible to show the victim's state of mind without violating the Confrontation Clause. United States v. Curcio, 310 F.Supp. 351, 357 (D.Conn.1970). Therefore, we conclude that defendant's Sixth Amendment right to confront witnesses against him has not been violated.
 
 
 33
 Finally, defendant asserts that it was highly prejudicial to allow someone to testify that he uses a gun. Defendant suggests that the prejudice was compounded by the joinder of counts because the seven other counts in the indictment involved the possession of firearms and required proof of a prior felony conviction.
 
 
 34
 Whenever evidence of a defendant's prior bad acts, including his criminal record, is admitted at trial there is the danger that the jury will convict, not on the evidence, but on its belief that the defendant is a man of criminal character. Where it is directed to a matter other than propensity, however, the law "does not demand exclusion of highly probative evidence simply to prevent noisome odors about the defendant from reaching the jury's nostrils."
 
 
 35
 DeVincent, 632 F.2d at 151 (quoting United States v. Bradwell, 388 F.2d 619, 622 (2d Cir.), cert. denied, 393 U.S. 867 (1968)). In this case, the evidence of defendant's reputation was specifically admissible pursuant to 18 U.S.C. Sec. 894(c) and was extremely probative of Mike's state of mind. Therefore, we do not believe the district court abused its discretion in determining that the probative value of Mike's testimony was not outweighed by the danger of unfair prejudice. See Vance, 871 F.2d at 575. Thus, we conclude that the district court did not err by admitting the testimony by Mike about defendant's reputation or by denying defendant's motion for a mistrial.
 
 III.
 
 36
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Defendant relies on the recent decision in United States v. Lopez, 115 S.Ct. 1624 (1995), as support for his argument that the government failed to present sufficient evidence demonstrating how the firearms or ammunition involved in counts one, two, three, four, and six of the indictment had affected interstate commerce. In Lopez, the Supreme Court struck down the Gun-Free School Zones Act of 1990, 18 U.S.C. Sec. 922(q)(1)(A), which made it a federal offense "for any individual knowingly to possess a firearm at any place that the individual knows, or has reasonable cause to believe, is a school zone," on the grounds that "[t]he Act neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce." Id. at 1626 (quoting 18 U.S.C. Sec. 922(q)(1)(A) (1988 ed., Supp.)). Accordingly the court held that the Act was unconstitutional because it "exceeds the authority of Congress '[t]o regulate commerce ... among the several states....' " Id. (quoting U.S. Const., Art. I., Sec. 8, cl. 3)
 Thus, Lopez, is distinguishable from this case. The statutes at issue in counts one, two, three, four and six of the indictment, 18 U.S.C. Secs. 922(g)(1) and 924(a)(2) do contain "a requirement that the possession be connected ... to interstate commerce." Id. Moreover, as discussed above, we have found that a connection to or an effect on interstate commerce was proven beyond a reasonable doubt in this case.