**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0003n.06
Filed: January 3, 2006

**No. 04-3553**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WILLIAM W. FARRELL, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Plaintiff-Appellee. | ) | |

Before: DAUGHTREY, GILMAN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. William Farrell appeals his convictions and sentence arising from his role in six bank robberies in Ohio, Pennsylvania and Kentucky. Because there is sufficient evidence to support the convictions and because the district court did not commit reversible error during his trial, we affirm his convictions. We remand the case for resentencing, however, under *United States v. Booker*, 543 U.S. 220 (2005).

I.

According to the evidence presented at trial, Farrell conspired with Tim Perkins and Thomas Savoca to rob six banks: the Great Lakes Bank in Mentor, Ohio on March 5, 2002; the Great Lakes Bank in Willoughby, Ohio on August 14, 2002; the Community National Bank in West Springfield,

Pennsylvania on September 12, 2002; the Courtland Savings Bank in Williamsfield, Ohio on November 12, 2002; the National City Bank in Catlettsburg, Kentucky on January 15, 2003; and the Great Lakes Bank in Concord Township, Ohio on June 27, 2003. The government argued that Farrell was the getaway driver or the third robber in each heist. The robbers sometimes carried firearms and at all times wore gloves and rubber Halloween-style masks of old men.

A witness to the Courtland Savings Bank robbery followed the getaway car and recovered three masks that the robbers had thrown out of the vehicle. A lab tested the masks and obtained DNA profiles from them. FBI agents secured grand jury subpoenas seeking DNA samples from Perkins, Savoca and Farrell. An agent served Farrell with the subpoena at his home on June 18, 2003, and told him that he was the subject of a bank-robbery investigation. Although Farrell agreed to appear before the grand jury in lieu of providing a DNA sample, he failed to appear, and police later were unable to locate him. Perkins, by contrast, provided a DNA sample, and tests indicated that his DNA matched the DNA found in one of the masks. Agents arrested Perkins, after which he provided a written statement implicating Savoca and Farrell in the robberies.

On September 6, 2003, a Ravenna, Ohio police officer stopped Farrell for a traffic violation. When the officer returned to his car to communicate with the police dispatch, Farrell's car sped off. The police chased his speeding car for about ten minutes before using "stop sticks" to deflate his tires. Farrell exited the car, and police chased him into a swampy area, eventually apprehending and arresting him. A camera in the officer's vehicle captured the car chase on video.

Once arrested, Farrell provided saliva samples, and his DNA matched DNA found in one of the masks. A DNA analyst testified at trial that Farrell's match was based on a scientific certainty of approximately 1 out of 4.7 trillion individuals.

A jury found Farrell guilty of conspiring to commit bank robberies under 18 U.S.C. § 371, of two counts of armed bank robbery under 18 U.S.C. § 2113(a) and (d) and § 2 and of possessing a firearm in connection with a crime of violence under 18 U.S.C. § 924(c) and § 2. The district court sentenced Farrell to a 294-month prison term and assessed him $448,328.25 in fines and restitution.

II.

On appeal, Farrell claims: that the trial court erred by admitting the taped car chase into evidence; that the court violated his due process rights by admitting tainted eyewitness testimony; that the court erred when it failed to hold that the government violated his *Brady* rights; that the court erred in denying his motion for a verdict of acquittal based on insufficient evidence; and that the court violated his Sixth Amendment rights by treating the Guidelines as mandatory.

A.

In objecting to the admission of the video at trial, Farrell argued that it was "unfair to put that kind of visual evidence in front of a jury" in a case where his arrest was "not an issue." JA 332. The government offered two responses. One, evidence of Farrell's flight demonstrated a consciousness of guilt because he knew that the FBI considered him a bank robbery suspect in view of its request

for a DNA sample. Two, the tape responded to "evidence produced by the defense that the robbers were very athletic in nature," *id.*, a theory that the defense used to show that the 63-year-old Farrell lacked the necessary agility and quickness to be one of the robbers. In admitting the evidence on both of these grounds, the court gave a limiting instruction to the jury, directing it to consider the evidence only in connection with the issues of Farrell's knowledge and identity and to ignore the degree to which it contained evidence of other criminal acts. We review this evidentiary ruling for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997).

The district court did not abuse its discretion in admitting the tape. "Evidence of flight is generally admissible as evidence of guilt, and juries are given the power to determine how much weight should be given to such evidence." *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998) (internal quotation marks omitted). While Rule 404(b) of the Federal Rules of Evidence prohibits the government from introducing evidence "of other crimes, wrongs, or acts"—here, for example, fleeing from a police officer—merely to show a defendant's criminal propensity, the rule allows such evidence to be admitted for other purposes, including to show knowledge and identity, both of which the government permissibly did here. *See* Fed. R. Evid. 404(b).

Nor has Farrell offered any response to the district court's second basis for admission—that the evidence was a legitimate response to the defendant's theory that he lacked the vitality to be one of the robbers. Farrell's counsel put his client's age and vitality at issue through questions he posed to witnesses ("Would you say [the robbers] appeared fairly youthful in the manner in which they jumped over the teller counter?" JA 169; "Would you say that the individuals who came into your

bank acted in an energetic manner?" JA 180) and through other evidence (noting that Farrell received Social Security benefits and used an oxygen tank). Under these circumstances, the district court did not abuse its discretion in concluding that the video cast Farrell in an "athletic light" and showed him "exhibit[ing] certain abilities or characteristics that may be related to the conduct of [the] alleged robbers in this case." JA 577.

As for Farrell's argument that the evidence was unduly prejudicial under Rule 403, "[a] district court is granted very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989) (internal quotation marks omitted). The court's limiting instruction adequately accounted for Farrell's undue-prejudice concern. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

B.

Farrell next claims that the district court violated his due process rights when it permitted the government to introduce tainted identification testimony. "Whether identification evidence was sufficiently reliable so as not to offend appellant's rights under the due process clause is a question of law," to which we give de novo review. *United States v. Meyer*, 359 F.3d 820, 825 (6th Cir. 2004) (internal quotation marks omitted).

On June 27, 2003, Kimberly Noe and Kathy Walker, two Great Lakes Bank employees, happened to be returning to the bank's parking lot just as three individuals were returning to their getaway car after robbing the bank. Both women saw the robbers briefly. Within 45 minutes to two

hours later, police separately showed each witness two photograph spreads of suspects in the investigation. While the officer conducting the identification reported that neither woman made a positive identification, an agent discovered later (several months later, indeed during the trial) that Noe claimed that she *had* selected one of the pictures as a photograph of one of the robbers. Based on this discovery, the agent took the original photograph spreads back to Noe and Walker. While Walker could not make an identification, Noe identified Farrell's picture in the array and indicated that she still remembered him from the day of the robbery. The government called Farrell's counsel that afternoon (a Friday), explained what had happened and indicated that Noe would be testifying on Monday along with the detective who reported that both women had not identified anyone the first time. While Farrell does not object to the first identification effort, he argues that the second contact with Noe tainted her testimony because it was unduly suggestive.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In this case, Farrell had an opportunity to present the jury with the circumstances surrounding the two identification procedures as well as to cross-examine Noe and the officer who administered the identification. At the same time, Farrell has not demonstrated that "being asked by an FBI agent to try, try again," Farrell Br. at 18, was by itself somehow unduly suggestive. While he contends that Noe did not make a positive identification when first presented with the photographs, this factual dispute

between Noe (who testified that she did pick Farrell) and the police officer (who explained that he did not consider a tentative identification to be an identification unless the witness indicated that she was certain) was fairly presented to, and legitimately resolved by, the jury.

C.

Farrell next claims the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it delivered several pieces of evidence to him either shortly before or shortly after introducing the evidence at trial. We review the mixed questions of law and fact presented by a *Brady* claim de novo. *United States v. Crayton*, 357 F.3d 560, 569–69 (6th Cir. 2004).

To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The government violates a defendant's due process rights when it withholds "evidence [that] is material either to guilt or to punishment," *Brady*, 373 U.S. at 87, and "[s]uch evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *Strickler*, 527 U.S. at 280 (internal quotation marks omitted).

Farrell's *Brady* claim targets the following evidence: a photograph taken from an ATM of one of the getaway cars; a security-camera videotape; results of tests taken from inside one of the getaway cars; a sample of carpet taken from a bank's lobby after a robbery; information regarding

fingerprint testing and testing on cigarette butts; and a police officer's reports of the January 15, 2003 Kentucky robbery. Farrell, however, never explains how this evidence was exculpatory or impeaching, and the government persuasively explains that this evidence was in most cases inculpatory and in other cases was either neutral or did not exist. The only other piece of alleged *Brady* evidence is an "expanded report" regarding the DNA tests on the masks, which "indicate[s] that Farrell's DNA was found in only one mask, but that other unidentified people's DNA was found in the same mask." Farrell Br. at 8. That another individual may have worn a mask used in a robbery, however, does not diminish evidence showing that Farrell wore the mask.

Even if Farrell could demonstrate the exculpatory or impeaching value of this evidence, his *Brady* claim still would fail. His complaint is not that the government completely withheld this evidence from him; it is that the government did not turn over some of the evidence until just before using it at trial and did not turn over other evidence "until the day after the witness with whom [it was] connected testified." *Id*. This "sandbagging," he alleges, frustrated his efforts to make effective use of the evidence. But "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002). And while the government disputes Farrell's contention that it was dilatory in disclosing evidence, even tardy disclosures of *Brady* material do not violate the defendant's constitutional rights unless he can demonstrate the delay denied him a constitutionally fair trial. *See id*. at 421 ("Delay violates *Brady* only where the delay causes prejudice."). Farrell has made no showing (or argument) that these alleged delays denied him a constitutionally fair trial

and has offered no explanation as to what he would have done differently had he been given more time to address this evidence, or that, had the evidence been given to him earlier, a reasonable probability exists that the result of his trial would have been different.

D.

Farrell next challenges the sufficiency of the evidence supporting his convictions, a contention that receives fresh review from us, *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002), and one that we must reject if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id.* (internal quotation marks omitted).

The doubts that Farrell attempts to raise regarding the sufficiency of the evidence in his case do not rise to this level. Taken in the light most favorable to the government, the evidence at trial more than adequately supports the jury's convictions of Farrell for conspiracy, armed bank robbery and possessing a firearm during a crime of violence. Abundant direct and circumstantial evidence supported Farrell's convictions, including detailed testimony from a co-conspirator (Perkins) that was independently corroborated by other witnesses, police surveillance and DNA evidence. Farrell's primary response to this array of inculpatory evidence is to claim that Perkins lacked credibility because he was a heroin addict. A credibility determination, however, is paradigmatically a question for a jury, not an appellate court, and we accordingly will not upset the jury's verdict on this basis.

E.

Because the government concedes that the district court committed plain error by treating the Sentencing Guidelines as mandatory when it sentenced Farrell, we remand the case for resentencing. *See United States v. Booker*, 543 U.S. 220 (2005); *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005).

III.

For these reasons, we affirm Farrell's convictions, vacate his sentence and remand for resentencing.