**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan A. ACOSTA–CAZARES,**
**Defendant–Appellant.**

**No. 88–6169.**

United States Court of Appeals,
Sixth Circuit.

Argued May 18, 1989.

Decided July 7, 1989.

James E. Arehart, Asst. U.S. Atty. (argued), Louis DeFalaise, U.S. Atty., Robert Trevey, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, Ky., for plaintiff-appellee.

Fred E. Peters (argued), McCoy, Baker & Newcomer, Lexington, Ky., for defendant-appellant.

Before MILBURN and NELSON, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Juan A. Acosta–Cazares ("defendant") appeals his jury convictions on various drug trafficking and firearm charges. For the reasons that follow, we affirm.

## I.

### A.

Defendant, along with another individual, Antonio Alvarez ("Alvarez"), was indicted on June 1, 1988, in a five-count indictment charging defendant in Counts I, III, IV, and V as follows: Count I, conspiring to distribute and possess with intent to distribute approximately two kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846; Count III, possessing with intent to distribute, approximately two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. §§ 2(a) & (b); Count IV, employing, hiring and enticing a juvenile (under eighteen years of age) to possess with intent to distribute and to conspire to distribute and possess with intent to distribute approximately two kilograms of cocaine in violation of 21 U.S.C. § 845b; and Count V, knowingly using a firearm in relation to the drug trafficking offenses charged in Counts I, III, and IV in violation of 18 U.S.C. § 924(c)(1) & (2) and 18 U.S.C. § 2(a) & (b). The indictment charged that the

above events occurred from May 1, 1988, to May 9, 1988.

A jury trial commenced on August 3, 1988, and on August 4, 1988, the jury returned a verdict of guilty against defendant on all counts. On August 11, 1988, defendant filed motions for judgment of acquittal and for a new trial. On October 13, 1988, the district court denied these motions.

Defendant was sentenced on October 7, 1988, to 121 months on each of Counts I, III, and IV to be served concurrently with each other. On Count V, defendant was sentenced to sixty months to be served consecutive to the term imposed on Counts I, III, and IV.[1] This timely appeal followed.

### B.

Prior to trial, coindictee Alvarez pleaded guilty and agreed to testify against defendant. Also, unindicted coconspirator Patricia Hayes testified against defendant. Alvarez testified that in the early part of 1988, he moved to Lexington, Kentucky, from New York City and established himself as a cocaine dealer. Alvarez was accompanied by a female, and as he spoke only Spanish, he employed the help of another individual to act as a translator during drug transactions. Alvarez testified that sometime in February 1988, he was in New York City when he learned that defendant wanted to work with him in Lexington. Eventually, defendant moved to Lexington and then moved into an apartment with Alvarez and Hayes. From this apartment (No. 124), defendant, Alvarez, Hayes, and Alvarez's translator began to distribute cocaine in increasing quantities.

Alvarez testified that on various occasions, he made trips to New York City to acquire cocaine which he then delivered to defendant for distribution in Lexington. Also, Alvarez stated that on at least one occasion, defendant himself traveled to New York City to obtain cocaine, which he then transported to Lexington for further resale. Alvarez testified that in late February or early March, the translator was replaced by a fifteen-year-old male from New York City named Damon Rodriguez.

According to Alvarez, Rodriguez and defendant made at least one run to New York City to purchase cocaine. This cocaine was resold in Lexington by defendant, Rodriguez, and Hayes out of apartment 124 where these individuals resided. Rodriguez was paid $500.00 a week by Alvarez.

In early May 1988, while Alvarez was in New York City, defendant sent Rodriguez to Alvarez with money for the purchase of cocaine. Alvarez testified that he purchased two kilograms of cocaine with the money defendant sent him through Rodriguez. The cocaine was packed in a box of laundry detergent, which was then placed in a suitcase. On May 9, 1988, Alvarez, Rodriguez, and a third individual were arrested at the Lexington–Bluegrass Airport in Lexington, Kentucky, carrying a suitcase containing two kilograms of cocaine. Alvarez testified that this cocaine was also going to be delivered to defendant for resale.

After the arrests at the Lexington Airport, police officers obtained search warrants for two apartments occupied or used by defendant, Alvarez, Rodriguez, and Hayes in Lexington. In apartment 124 officers found a .38 caliber weapon, a shoulder holster for a .38 caliber, and ammunition for the weapon. The officers also found airplane tickets, walkie-talkies, and defendant's personal papers. Additionally, $1,941.00 in cash was found in this apartment. Defendant and Hayes were arrested in apartment 124, but defendant insisted that he lived in apartment 106 and was only in apartment 124 to feed Alvarez's dog.

Police officers also searched apartment 106. The officers found plastic baggies, triple beam scales, a nine millimeter gun, a .45 caliber pistol, and a .25 caliber pistol. Also, the officers found some cocaine un-

---

**1.** A conviction for use of a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1) requires a nonconcurrent sentence.

der a sink in apartment 106, along with the .45 caliber pistol.

Patricia Hayes testified that Alvarez and defendant traded places in traveling to New York City to obtain cocaine and selling cocaine in Lexington. She further testified that defendant and Alvarez sold cocaine every day, twenty-four hours a day, out of their apartment in Lexington, Kentucky. According to Hayes, defendant had a .38 caliber firearm or another firearm on his person or nearby whenever he sold cocaine. Likewise, Rodriguez testified against defendant, basically reiterating Hayes' and Alvarez's testimony.

Defendant testified in his own behalf and denied any involvement with Alvarez and Rodriguez in a conspiracy to distribute two kilograms of cocaine. He stated he lived with Hayes in apartment 106 but was not sure where Hayes or Alvarez obtained their money. Defendant testified that Alvarez, Hayes, and Rodriguez lied about his involvement in drug transactions.

On appeal, defendant raises three issues as follows: (1) whether the district court erred in admitting testimony regarding prior acts of the defendant under Fed.R.Evid. 404(b), (2) whether the district court erred in denying defendant's motion for judgment of acquittal as to Count V of the indictment, and (3) whether the court erred in increasing defendant's sentencing level pursuant to the new United States Sentencing Guidelines ("the Guidelines").

## II.

### A.

■ Defendant first claims that the district court erred in admitting evidence under Fed.R.Evid. 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under this rule, evidence of criminal character or propensity is excluded because the jury might convict the defendant for the conduct proving propensity rather than for the offense for which he is on trial. *See United States v. Davis*, 707 F.2d 880, 884 (6th Cir.1983). However, if the evidence is produced for a reason enumerated in the rule, it is admissible. Thus, we have explained that Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985). Moreover, "[t]he list of permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive." *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987) (citing *United States v. Wesevich*, 666 F.2d 984, 988 (5th Cir.1982)). *See also Blankenship*, 775 F.2d at 739.

Our review of a district court's ruling under Rule 404(b) is limited. *United States v. Hatfield*, 815 F.2d 1068, 1072 (6th Cir.1987). We will reverse a district court's 404(b) ruling only upon a finding of abuse of discretion. *United States v. Hamilton*, 684 F.2d 380, 384 (6th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982) (citing *United States v. Czarnecki*, 552 F.2d 698, 702 (6th Cir.), *cert. denied*, 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977)). "In determining the admissibility of bad acts evidence under Rule 404(b), a trial judge is accorded 'broad discretion.'" *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.1989) (quoting *United States v. Ebens*, 800 F.2d 1422, 1433 (6th Cir.1986)). *See also Hatfield*, 815 F.2d at 1072; *United States v. Townsend*, 796 F.2d 158, 162 (6th Cir.1986); *United States v. Fraser*, 709 F.2d 1556, 1559 (6th Cir. 1983); *Czarnecki*, 552 F.2d at 702.

A two-step process should be undertaken by the district court in ruling upon evidence submitted under Rule 404(b). The court

> must decide whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b). If so, the court must con-

sider whether the probative value of the evidence is outweighed by its potential prejudicial effect.

*United States v. Huddleston,* 811 F.2d 974, 976 (6th Cir.1987) (per curiam), *aff'd,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). *See also Townsend,* 796 F.2d at 162; *United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985); *United States v. Dabish,* 708 F.2d 240, 242 (6th Cir.1983); *United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982).

■ Approximately two months prior to trial, defendant filed a pretrial motion requesting that the government give notice of its intent to use any evidence of other crimes, wrongs, or acts of defendant under Rule 404(b). Since the indictment charged a conspiracy from about May 1, 1988, to May 9, 1988, presumably defendant's counsel sought to discover what evidence the government possessed of drug transactions entered into prior to that time. In the government's written response to defendant's motion, it indicated that it was unaware of any "tangible or physical" Rule 404(b) evidence that defendant would be entitled to under Fed.R.Crim.P. 16 (requiring the disclosure of certain evidence by the government). The government's response also indicated that "any 404(b) evidence will be strictly testimonial in nature...."

A pretrial hearing was held on July 11, 1988, at which time the Assistant United States Attorney present responded that the government had no "404(b) ... stuff" to present at trial. Given this representation, the district court overruled defendant's pretrial motion as moot.

During his opening statement, however, the prosecutor referred to prior bad acts of defendant, including drug transactions occurring prior to the time frame charged in the indictment. The defense attorney objected, and after a bench conference, the district court ruled that the government would be held to its pretrial representation and could not use any Rule 404(b) evidence in its case-in-chief. The district court limited the government to the use of Rule 404(b) evidence on rebuttal, if at all.

After this colloquy, defense counsel made a brief opening statement wherein he stated that his client was not involved in any conspiracy to distribute cocaine but was merely *"a victim of circumstances."* Counsel for the United States then renewed his motion to introduce Rule 404(b) evidence during the government's case-in-chief. The prosecutor argued that questions regarding defendant's knowledge, intent, and plan were put in issue by defense counsel's opening statement and that the government should therefore be allowed to present evidence on these points. The district court requested an offer of proof, and the government indicated that it had evidence of defendant's involvement in drug transactions prior to the one charged in the indictment. The court then ruled that the government could produce this evidence during its case-in-chief, concluding that during opening statement defense counsel had put in issue defendant's intent, plan, and knowledge regarding the May 1 to May 9, 1988, conspiracy to distribute two kilograms of cocaine. The court also found the evidence showed an "absence of mistake" under the rule.

On appeal, defendant asserts that the district court erred in admitting evidence of drug transactions prior to the time of the indictment as the court: (1) allowed the United States to "sandbag" by representing no Rule 404(b) evidence would be presented and then permitting such evidence, and (2) failed to make specific findings that the probative value of the evidence introduced was not substantially outweighed by the danger of unfair prejudice. We reject these arguments.

First, a fair reading of the record in this case discloses that the United States did put defendant on notice that it would offer Rule 404(b) testimony. The government's written response to defendant's pretrial motion indicated only that no tangible Rule 404(b) evidence would be presented. The government's statement at the pretrial hearing that it had no 404(b) "stuff" is consistent with the written response.

Furthermore, there is absolutely no evidence that the government intentionally

**950**

misled or delayed in responding to defendant's pretrial discovery request. Although the government's pretrial representation might be viewed as potentially misleading, the prosecutor present that day was not the prosecutor who would try the case, and, as the district court acknowledged, the substitute apparently "didn't know everything ... he should have...."

The district court must be given wide discretion over pretrial discovery matters. *United States v. Elam,* 678 F.2d 1234, 1253 (5th Cir.1982) ("The admission of evidence which has not been properly identified ... pretrial ... is largely a matter for the sound discretion of the trial judge."); *United States v. Sarcinelli,* 667 F.2d 5 (5th Cir.1982). *See also* Fed.R.Crim.P. 16(d)(2). Under the facts of this case, we hold that the district court did not abuse its discretion in permitting the government to produce Rule 404(b) evidence in its case-in-chief. Defendant's counsel raised questions regarding defendant's knowledge, intent, and plan during his opening statement by first denying that defendant was involved in *any* conspiracy to distribute cocaine and then stating that defendant was merely a *"victim of circumstances."* [2]

Defendant also argues that a new trial is required as the district court failed to make findings on the record in ruling upon the government's Rule 404(b) motion. We note that although the court in this case concluded that the evidence submitted by the government falls within the exceptions under Rule 404(b), the court did not, on the record, find that its probative value substantially outweighed its potential prejudicial effect. We hold, however, that this failure does not require reversal under the facts of this case.

In *United States v. Robinson,* 700 F.2d 205, 213 (5th Cir.1983), the Fifth Circuit

held, in the context of an objection under Rule 404(b), that "[i]n the absence of on-the-record findings *in response to such a request,* we will be obliged to remand unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling." (emphasis added). This court likewise has indicated that when presented with an objection under Rule 404(b), the district court should consider whether the probative value is outweighed by the evidence's potential for prejudicial effect as explained in Fed.R.Evid. 403. *Huddleston,* 811 F.2d at 976; *Dabish,* 708 F.2d at 242. *See also Ebens,* 800 F.2d at 1434 ("[T]he better course [is] to make a special record....").

A review of the record in the present case, however, discloses that the issue of probative value/prejudicial effect was not mentioned by defense counsel during the colloquy with the district judge. Defendant's opposition to the evidence concerned whether it was admissible in light of the government's pretrial representations and whether it was presented for a proper purpose under the rule.[3] Thus, the defendant failed to request an on-the-record balancing such as might require reversal under *Robinson* solely due to the court's failure to make an express finding on this issue.

Since defendant did not specifically raise the issue in the district court, on-the-record balancing, not surprisingly, did not occur. However, we note that the balancing analysis may be subsumed in the court's ruling admitting the evidence. *See United States v. Milhollan,* 599 F.2d 518, 525 (3d Cir.), *cert. denied,* 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979). Our review of the record indicates that the probative value of the evidence was, in fact, not substantially

---

**2.** Although defense counsel contends he would not have made an opening statement had he not been misled, counsel's opening statement was made *after the government informed the court* (and the court ruled in the government's favor) *that it would offer Rule 404(b) evidence on rebuttal.* Thus, when defense counsel made his statement, he was aware that the United States intended to use Rule 404(b) evidence.

**3.** Defense counsel stated that he wanted the record to reflect a continuing objection to the government's Rule 404(b) evidence "for the reasons previously stated." Yet defense counsel did not argue the evidence's prejudicial effect substantially outweighed its probative value nor did he mention Fed.R.Evid. 403, which expressly requires such a determination.

outweighed by its potential prejudicial effects. We conclude, therefore, that the court's failure to set out its probative value/prejudicial effect findings on the record does not require reversal, where defense counsel did not request any balancing, and where review of the record in this case indicates that the evidence was properly admissible. *See United States v. Sutton,* 801 F.2d 1346, 1362 (D.C.Cir.1986) ("[R]eversal ... for failure to make such a balancing on the record is inappropriate ... if defense counsel failed to request such balancing...."); *United States v. Rosa,* 705 F.2d 1375, 1378 (1st Cir.1983); *United States v. Bradshaw,* 690 F.2d 704, 708–09 (9th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1982); *United States v. DeJohn,* 638 F.2d 1048, 1052–53 (7th Cir.1981); *United States v. Price,* 617 F.2d 455, 460 (7th Cir.1979). *See also United States v. Zabaneh,* 837 F.2d 1249, 1262 (5th Cir.1988) (remanding the case to the district court to conduct Rule 404(b) balancing on the record because defense counsel "repeatedly drew the district court's attention" to the balancing requirement, but the court failed "to ... articulate its ... probative value/prejudice findings *when requested*") (emphasis in original).

Here, the record is clear that defendant did not request that the court make a balancing determination under either Rule 403 or Rule 404(b). Also, as stated, our independent review of the record establishes that the probative value of the evidence submitted by the government is not substantially outweighed by its prejudicial effect. Thus, the district court did not abuse its discretion in admitting this evidence.

### B.

■ Defendant next argues that the district court erred in denying his motion for judgment of acquittal with respect to Count V of the indictment charging him with a violation of 18 U.S.C. § 924(c)(1), using and carrying a firearm during and in relation to a drug offense. Section 924(c) provides in relevant part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1) (Supp.1989).

Defendant asserts that no evidence was presented that he used or carried firearms during and in relation to any drug trafficking crime committed between May 1 and May 9, 1988. "In a criminal case the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Ellzey,* 874 F.2d 324, 327–328 (6th Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Section 924(c) applies to an individual who "uses" or "carries" a weapon "during and in relation to" any drug trafficking crime. Contrary to defendant's assertion, courts have not held that "carries" means actual possession, or that "uses" means brandishment or display. *See United States v. Matra,* 841 F.2d 837, 842 (8th Cir.1988); *United States v. Robinson,* 857 F.2d 1006, 1010 (5th Cir.1988); *United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981); *United States v. Moore,* 580 F.2d 360, 361–62 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). In *Matra,* police found weapons, ammunition, a large quantity of cocaine, cash, and drug paraphernalia in the defendant's house. None of these items were in the actual possession of the defendant, "but all were under his control." *Matra,* 841 F.2d at 842. Although the defendant in *Matra* urged the court to interpret section 924(c)'s "use" language to preclude conviction unless the government shows the defendant actually possessed the weapon, the Eighth Circuit rejected "such a narrow interpretation." The court analogized to a fortress situation stating:

> Just as weapons are kept at the ready to protect military installations against potential enemy attack, so too may weap-

ons be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions.

*Id.* (citing *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985). *See also United States v. Grant,* 545 F.2d 1309 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977)). While guns were not found on the defendant's person, the court noted that they were "an integral part of his criminal undertaking and [their] availability increased the likelihood that the criminal undertaking would succeed. In these circumstances, it would defy both logic and common sense to conclude that [defendant] did not 'use' [guns] within the meaning of section 924(c)." *Id.* at 843.

The Fifth Circuit relied on *Matra* in *United States v. Robinson,* 857 F.2d 1006 (5th Cir.1988), wherein the court upheld a section 924(c)(1) conviction despite the fact the defendant did not have actual possession of the weapons. In *Robinson,* a search of defendant's home produced various weapons, miscellaneous drugs, and drug paraphernalia. Defendant argued that the government failed to prove either ownership or that defendant used or carried weapons in any drug-related transactions. The Fifth Circuit, however, indicated that the jury could have found defendant used firearms "as a means of safeguarding and facilitating illegal transactions and as an integral means of protecting his possession of [narcotics]." *Id.* at 1010. Other cases have similarly held that "uses" and "carries," as employed in section 924(c), should be broadly construed. *See, e.g., United States v. Stewart,* 779 F.2d 538, 539 (9th Cir.1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987) (weapon in trunk of car); *United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981) (firearms kept holstered and hidden, but still "carried" and "used"); *United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979) (defen-

dant "carried" a weapon in the glove compartment of the car he drove to the site of a drug transaction). As the Eighth Circuit explained in *United States v. LaGuardia,* 774 F.2d at 321, "[s]ection 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony."

In the present case, the evidence presented showed that defendant kept weapons in his apartment, readily accessible, to facilitate his drug transactions. As the above review indicates, the statute does not require actual physical possession of a weapon or that the defendant actually brandished the weapon in the commission of a drug offense. We hold that "uses" and "carries" should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.[4]

Although defendant maintains no evidence was presented that he used weapons during the time frame of the indictment, we find ample evidence to support the jury's verdict. Police officers found numerous loaded weapons in both the apartment in which defendant lived and the one in which he sold cocaine. Alvarez testified that on the day of his arrest, May 9, 1987, defendant was awaiting a cocaine shipment. Moreover, Hayes and Rodriguez both testified that defendant carried weapons when engaging in drug transactions. Thus, defendant used weapons as "an integral part of his criminal undertaking...." *Matra,* 841 F.2d at 843.

From this evidence, a jury could reasonably infer that defendant used weapons during the conspiracy and in connection with the substantive drug offenses. Viewing the evidence in the light most favorable to the government, the evidence links defendant to the weapons and the weapons to the underlying drug trafficking convictions.[5] The district court properly denied

---

**4.** At oral argument, defense counsel conceded that if the government proved, under the facts of this case, that defendant "possessed" the

weapons found in the apartments, then he could not prevail in his argument as to Count V.

**5.** Defendant also asserts that because the weapons were found in his apartment but the co-

defendant's motion for judgment of acquittal with respect to Count V.

### C.

Defendant was sentenced pursuant to the United States Sentencing Guidelines. In the defendant's presentence investigation report, defendant's offense level was increased two levels for "obstruction of justice." The basis for this two-level increase is found in section 3C1.1 *Willfully Obstructing or Impeding Proceedings,* which provides in relevant part:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels.

The commentary to section 3C1.1 explains that where a defendant testifies untruthfully concerning a material fact, he should be deemed obstructing justice, and the two-level increase should apply. The commentary, however, cautions that "[t]his provision is not intended to punish a defendant for the exercise of a Constitutional right. A defendant's denial of guilt is not a basis for application of this provision."

Defendant argues that the district court ignored the guidelines and, in effect, increased his sentence for denying his guilt in the proceedings. Defendant asserts that sentencing in this manner is unconstitutional as it punishes him for exercising his constitutional right to testify at trial.

We note, however, that there is no constitutional right to testify untruthfully at trial. A defendant denies his guilt by pleading "not guilty" while not under oath. There is, however, no constitutional right to commit perjury either as a defendant testifying on his or her own behalf or as a witness testifying before a grand jury. *United States v. Curtis,* 742 F.2d 1070, 1076 (7th Cir.), *cert. denied,* 475 U.S. 1064,

106 S.Ct. 1374, 89 L.Ed.2d 600 (1984). In *United States v. Ford,* 840 F.2d 460, 467 (7th Cir.1988), a pre-guidelines case, the Seventh Circuit made it clear that a sentence may be enhanced where a district judge believes the defendant committed perjury. *See also United States v. Lovett,* 811 F.2d 979, 989 (7th Cir.1987); *United States v. Marquardt,* 786 F.2d 771, 782 (7th Cir.1986). We likewise hold that in applying the guidelines, there is no constitutional protection against increased sentencing where it is believed that the defendant attempted to obstruct justice by lying during his testimony.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.

---

caine was seized at the Lexington airport approximately eight miles away, no relationship can exist between the weapons and drugs. This assertion is easily answered by the testimony of Alvarez that he was on his way to the apartment when arrested and of Hayes and Rodriguez that

defendant commonly used weapons when engaging in drug transactions. *See also United States v. Ramos,* 861 F.2d 228, 230 (9th Cir. 1988) (all that need be shown under section 924 is a "causal connection" between the narcotics and firearms).