951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory A. GEVARAS, Defendant-Appellant.
 No. 91-3365.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before KENNEDY and BOGGS, Circuit Judges, and EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 Gregory Gevaras was charged with one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1) and one count of carrying or using firearms unlawfully during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Gevaras entered a plea of not guilty and challenged the legality of the search warrant used to obtain much of the evidence against him. The district court denied the suppression motion and a jury eventually found Gevaras guilty on both counts. He received two consecutive 60-month sentences.
 
 
 2
 Gevaras appealed his convictions and presents this court with two assignments of error. First, Gevaras reasserts his challenge to the legality of the search warrant, claiming that it was not supported by probable cause. Second, Gevaras argues that the evidence presented at trial could not support a conviction under 18 U.S.C. § 924(c)(1). For the reasons set forth below, we AFFIRM both the district court's ruling on the suppression motion and the jury's decision to convict Gevaras under § 924(c)(1).
 
 I.
 
 3
 Gevaras was convicted on the basis of evidence found in a search of his bar, the Town Pump Lounge in Cleveland, Ohio, on January 12, 1990. Detectives Tom Shoulders and Mike Carosielli of the Cleveland Police narcotics unit searched a portion of the bar pursuant to a search warrant issued by a state court. Detective Shoulders had given an affidavit in support of the warrant. The affidavit set forth the following facts:
 
 
 4
 1) During the several weeks prior to his application for the search warrant, Shoulders had received information and complaints from several citizens that drug transactions were taking place in and around the Town Pump Lounge.
 
 
 5
 2) During the 72 hours prior to his application for the search warrant, Shoulders, along with other officers, had conducted surveillance of the Town Pump Lounge. During this time, officers had observed people going to the back door of the bar, being met at the door by a male, appearing to exchange something with the male, and then leaving the area. Shoulders described such activity as indicative of commerce in a controlled substance.
 
 
 6
 3) During the 48 hours prior to his application for the warrant, Shoulders and other detectives met with a confidential and reliable informant (CRI) who had provided the police with correct information in the past. The CRI made a controlled buy of cocaine at the Town Pump Lounge. CRI entered the Lounge through the rear door with money provided by the detectives and returned a short time later with a small plastic bag containing a white powdery substance that was field tested and found to be cocaine.
 
 
 7
 4) Based on the controlled purchase, the citizen complaints, the results of surveillance, and his own training and experience, Shoulders believed that narcotics trafficking was taking place on the premises of the Town Pump Lounge.
 
 
 8
 Detectives Shoulders and Carosielli went to the Town Pump Lounge to execute the warrant and entered the back door into the basement area of the bar. The officers proceeded through a storage area to another door, which led to the bar office. When the detectives entered the office, they found Gevaras seated at a desk and a woman, later identified as Alice Falkenstein, seated on a couch. The officers observed a white powdery substance on the desk in front of Gevaras, a large sum of money in an open desk drawer, and a gun protruding from a another desk drawer nearby. The police interrupted this nascent narcotics transaction, searched the office and found approximately $62,000 in cash, several firearms and a large quantity of cocaine.
 
 
 9
 Gevaras argues that the affidavit in this case did not establish probable cause to search the Town Pump Lounge. He relies almost entirely on Ybarra v. Illinois, 444 U.S. 85 (1979). In Ybarra, the affidavit used to support the warrant stated that the officer-affiant had observed 15 to 25 tin foil packets on the person of the bartender in a particular tavern. The affidavit also stated that a confidential informant told police that, on previous occasions, he had observed the same. (Heroin is customarily packaged in small foil packets.) The informant also told police that the bartender had stated that he would have heroin for sale on Monday, March 1, 1976. A warrant was issued, authorizing police to search the bar area and the bartender.
 
 
 10
 When officers searched the bar they also patted down all of the customers who were present. They found heroin on the person of Mr. Ybarra, one of the patrons, and he was later convicted. The Supreme Court ultimately reversed the conviction, holding that the police did not have probable cause to search all of the patrons of the bar. Gevaras contends that since the affidavit in this case did not state who sold the drugs to the CRI at the Town Pump Lounge, the court had no basis to conclude that there were narcotics on the premises of the Town Pump at the time of the execution of the search warrant. Gevaras argues that it was just as likely that a patron was selling drugs inside the bar. Gevaras theorizes, therefore, that this case presents us with a sort of "reverse-Ybarra " fact pattern, in which police may have had probable cause to believe that some patron was selling drugs, but not that any person affiliated with the bar was in possession of or trafficking in cocaine.
 
 
 11
 To state this argument is to refute it. In Ybarra, the Supreme Court held that where a warrant allows a search of a business establishment and a specific employee, the fourth amendment will not allow an indiscriminate search of all the patrons. In this case, the warrant authorized a search of the premises of the Town Pump Lounge and that is exactly what the detectives conducted. Ybarra is inapposite. The case cannot be used to invalidate the search warrant here.
 
 
 12
 Probable cause is established if the affidavit sets forth facts from which the magistrate can determine, from the "totality of the circumstances," that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983). A reviewing court must afford "great deference" to the court or magistrate that issued the warrant. U.S. v. Loggins, 777 F.2d 336 (6th Cir.1985); U.S. v. Algie, 721 F.2d 1039, 1041 (6th Cir.1983). We agree completely with the district court that the facts presented in Detective Shoulders's affidavit clearly establish probable cause to search the Town Pump Lounge.
 
 II
 
 13
 Gevaras's second contention is that the evidence presented at trial could not support the jury's verdict convicting him of using or carrying a firearm unlawfully during and in relation to a drug trafficking offence in violation of 18 U.S.C. § 924(c)(1).
 
 
 14
 As stated, when the police searched the office of the Town Pump they recovered several firearms. When they entered the office, the police immediately observed the butt of a semi-automatic pistol lying in an open desk drawer within the reach of Gevaras. The gun was a Browning 9 mm semi-automatic pistol loaded with live rounds. A loaded clip for this firearm was found on top of the desk where Gevaras had been seated. An unloaded double barrel shotgun was found leaning against the wall in a corner of the office. The detectives also found, on a shelf located about five feet away from Gevaras's desk, an unloaded 9 mm MAC 11, SWD, Inc., semi-automatic pistol and a clip loaded with 17 rounds.
 
 
 15
 Gevaras explains that he kept the weapons to protect his bar, check cashing, and lottery ticket business, which he claims is located in a rather dangerous part of town. While this may be true, it is also true that part of his business involved selling cocaine. When the police entered Gevaras's office, they found a loaded gun within his reach. Gevaras was engaged in what was later confirmed to be a cocaine transaction. Section 925(c)(1) does not require the government to prove that a defendant actually held and used a gun during the commission of a drug offense. In the Sixth Circuit, the statute is "construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." U.S. v. Acosta-Cazares, 878 F.2d 949 (6th Cir.1989). It is clearly true that "[j]ust as weapons are kept ready to protect military installations against potential enemy attack, so to may weapons be kept ready to protect a drug house, thereby safeguarding and facilitating illegal transactions." U.S. v. Matra, 841 F.2d 837, 842 (8th Cir.1988).
 
 
 16
 In determining whether the evidence is sufficient to support a jury verdict, this court must give great deference to the jury's findings. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the verdict is supported by sufficient evidence. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gibson, 675 F.2d 825, 829 (6th Cir.1982). Applying this standard, we hold that the evidence in this case is more than sufficient to support a conviction under 18 U.S.C. § 924(c)(1).
 
 
 17
 For the reasons discussed, we AFFIRM the ruling of the district court and the determination of the jury.
 
 
 
 *
 R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation