961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bradley LESTER, Defendant-Appellant.
 No. 91-3860.
 United States Court of Appeals, Sixth Circuit.
 May 12, 1992.
 
 Before MERRITT, Chief Judge, BOYCE F. MARTIN, Jr. and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 In this case stemming from a raid by local police on a suspected crack house, the defendant was convicted of one count each of conspiracy to distribute a controlled substance under 21 U.S.C. 846, possession with intent to distribute a controlled substance in violation of 21 U.S.C. 841(b)(1)(B)(iii), and carrying a firearm during and in relation to a drug offense under 18 U.S.C. 924(c). On appeal, the defendant raises two issues. The first challenges the search conducted by the police on Fourth Amendment grounds; the second concerns the sufficiency of the evidence used to convict him of the firearms charge. For the following reasons, we will affirm the judgment of the District Court on both issues.
 
 
 2
 A confidential informant told local police detectives that members of a drug conspiracy were using two separate addresses, one as a "crack house," for sale of crack cocaine, and the other as a "stash house," where crack was made and stored. She also told police that the conspirators were moving drugs between the two houses. The day after the informant provided this tip, the detectives arranged to observe the informant as she solicited drugs from the crack house. Told by the house's occupants that no drugs were available there, the informant next went to the stash house, where she succeeded in buying crack. She reported back to the waiting detectives and told them that drugs were shortly to be taken from the stash house to the crack house in a two-tone Chevrolet Blazer by four or five people from inside the former house. She also stated that the Blazer might contain guns, specifically a pistol and a 9mm MAC-11 semiautomatic gun.
 
 
 3
 About a half hour later, the detectives watched as five people left the stash house and entered a Blazer matching the informant's description. When uniformed police pulled the truck over soon thereafter, a 9mm MAC-11 was taken from a juvenile occupant, and a .22 caliber pistol was also found inside. The adult driver had a small amount of cocaine in his possession when he was arrested. Two small packages of crack were also found in the Blazer.
 
 
 4
 The detectives outside the stash house resumed their surveillance. Shortly after the Blazer was stopped and its occupants arrested, a car pulled into a parking lot next to the stash house and honked its horn. The car left but soon returned, again honking its horn before leaving once more. At trial, two detectives testified that they assumed this honking to have been a warning of imminent police action to the house's occupants, thus signaling them to destroy the evidence of their drug transactions. Assuming this to be such a signal, the detectives entered the house without a warrant and seized its occupants, including Lester. The police ordered them to lie down on the floor while one of the detectives obtained a search warrant. After obtaining the warrant, the detective called the other detectives present at the house, who began to search the premises before he returned with the warrant in hand. 26 grams of crack cocaine were found in a coat hanging in a closet. This coat was identified at trial as belonging to Lester. Two witnesses--one of whom, the owner of the raided house, had identified the defendant as the coat's owner--also identified him as having purchased and possessed a MAC-11 weapon such as the gun found in the Blazer.
 
 
 5
 The defendant challenges the purported justifications for the initial warrantless entry--i.e., the honking of the car's horn as a signal to destroy evidence--as failing to establish the existence of exigent circumstances. Lester's counsel, however, failed to file a motion to suppress the evidence obtained as a result of the warrantless entry and search, nor did he raise the exigent circumstances issue during the trial. Under Federal Rule of Criminal Procedure 12(b)(3), a motion to suppress evidence "must be raised prior to trial." According to the Advisory Committee,
 
 
 6
 Subdivision (b)(3) makes clear that objections to evidence on the ground that it was illegally obtained must be raised prior to trial. This is the current rule with regard to evidence obtained as the result of an illegal search. It is also the practice with regard to other forms of illegality such as the use of unconstitutional means to obtain a confession. It seems apparent that the same principle should apply whatever the claimed basis for the application of the exclusionary rule of evidence may be.
 
 
 7
 Fed.R.Crim.P. 12(b)(3) advisory committee's note (1974 amendment) (citations omitted). The rule is well established in this Circuit that the failure to submit a motion to suppress evidence in a timely fashion under Rule 12(b)(3) "shall constitute waiver thereof, unless the court grants relief from the waiver." United States v. Worthington, 698 F.2d 820, 824 (6th Cir.1983), cited in United States v. Sachs, 801 F.2d 839, 847 (6th Cir.1986). Even if the district court chose in its discretion to hear an untimely motion to suppress, the merits of the motion are not preserved for appeal because the requirements of the rule have not been met. Sachs, 801 F.2d at 847. This issue was not addressed to the District Court, nor did counsel give at oral argument any reasons why this particular issue could not have been properly raised before trial as required by the Rule. Since the defendant failed to file a motion to suppress, he has waived this argument on appeal. See Sachs, 801 F.2d at 847.
 
 
 8
 The defendant, however, presented another issue to the District Court, which he conflated during oral arguments with the exigent circumstances, search question. The defendant argues that the officers' failure to serve a search warrant before searching the premises violated his Fourth Amendment rights. This issue was also not raised in a pretrial motion to suppress, as required by Rule 12(b)(3). The District Court granted relief from the waiver because Lester's counsel only ascertained during a detective's trial testimony that the warrant was not served before the search commenced. Counsel has a duty to inquire before trial and to raise such issues. This issue is also waived. Id. at 847. Moreover, under Rule of Criminal Procedure 41(d), an otherwise valid search warrant need not be served at the onset of a search for it to be correctly executed, as long as a copy of the warrant is left with the person from whose premises property is removed. See Fed.R.Crim.P. 41(d). The same rule is in effect in Ohio, where the local police search occurred. See Ohio R.Crim.P. 41(D). The Fourth Amendment does not require invariably that a search warrant must be openly displayed before a search commences. See, e.g., United States v. Martinez, 498 F.2d 464, 468 (6th Cir.), cert. denied, 419 U.S. 1056 (1974).
 
 
 9
 The defendant's final contention is that insufficient evidence existed for the jury to convict him under 18 U.S.C. 924(c) of possession of a firearm during and in relation to a drug offense. So, he contends that the District Court erred in denying his motion for acquittal. The defendant received five years' imprisonment under this statute for his connections to the MAC-11 semiautomatic gun seized from the passenger of the Blazer. Despite his argument that the evidence connecting him to this weapon is too attenuated, particularly in terms of a time reference linking him to the period for which he was indicted, two witnesses testified to his role in the purchase and use of the gun. One witness, the owner of the house where the raid took place, testified that she had observed the defendant and other individuals with weapons, both at her house and at the crack house. She also described one gun in particular that was present at her home during the day of the raid and was also in the possession of the defendant and a co-defendant. The general description of that weapon matched that of the MAC-11 seized from the Blazer. A second witness, one of the co-defendants, testified that he and Lester together bought the MAC-11 for "protection" of the drugs.
 
 
 10
 Section 924(c)(1) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm, shall, in addition to the punishment provided for such [underlying crime], be sentenced to imprisonment for five years." 18 U.S.C.A. 924(c)(1) (West Supp.1992). This definition does not define "carries" as actual possession, nor does it define "uses" as actual display of a gun. United States v. Acosta-Cazares, 878 F.2d 945, 951 (6th Cir.), cert. denied, 493 U.S. 849 (1989).
 
 
 11
 The evidence provided by the two witnesses, when viewed in a light most favorable to the government, links the defendant to the seized MAC-11. The evidence showed that the defendants, including Lester, maintained a ready access to firearms to protect their operations and to intimidate others. This evidence squarely comports with our court's broad application of 924(c) to apply to "the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." Acosta-Cazares, 878 F.2d at 952. See also United States v. Chambers, 944 F.2d 1253, 1266 (6th Cir.1991); United States v. Christian, 942 F.2d 363, 366-67 (6th Cir.1991); United States v. Head, 927 F.2d 1361, 1366 (6th Cir.1991). We find no error in the District Court's resolution of this issue.
 
 
 12
 Accordingly, the judgment of the District Court is AFFIRMED.