972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry WALKER, Defendant-Appellant.
 No. 91-2014.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1992.
 
 Before MILBURN and SILER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Larry Walker, Jr. appeals his conviction and sentence for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). On appeal, the issues raised by defendant are (1) was defendant subject to prosecution under 18 U.S.C. § 922(g) since he was on probation when he possessed the ammunition underlying the charge in this case, (2) did the trial judge abuse his discretion in allowing cross-examination as to defendant's prior possession of a loaded handgun after defendant denied knowing that the ammunition seized from his bedroom was there, and (3) did the trial judge properly refuse defendant's request for credit for the time he spent while on bond before trial in the community treatment center. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On January 11, 1991, defendant Walker's residence at 829 South 24th Street, Saginaw, Michigan, was searched pursuant to a federal search warrant. The warrant authorized agents of the FBI to search for evidence of an armed robbery of a credit union. The search resulted in the discovery of a variety of forms of ammunition in Walker's home and particularly in his bedroom. A magazine clip containing five .25 caliber shells, plus loose .22 caliber and .25 caliber ammunition were found in a drawer next to Walker's bed. The search of the floor, a shelf in Walker's bedroom, and under Walker's mattress led to the discovery of additional ammunition including two shotgun shells, thirty-seven .22 caliber rounds, thirty-four .32 caliber rounds, two .38 caliber rounds, three .357 caliber rounds, and one 9 mm. round of ammunition. All the aforementioned ammunition seized along with numerous personal items found with the ammunition were evidence of Walker's occupancy of the bedroom. Two additional .22 caliber rounds were found in a bedroom occupied by Dexter Bond, defendant's housemate; however, the two .22 caliber rounds were not offered in evidence at Walker's trial.
 
 B.
 
 3
 Defendant was originally charged in a complaint, and he surrendered to the FBI on January 31, 1991. At his initial appearance, he was temporarily detained pending a hearing pursuant to the government's motion. However, the following day, February 1, 1991, his combined preliminary examination/detention hearing was held at which time the magistrate judge, while finding that probable cause existed, denied the government's motion for detention. The magistrate judge ordered defendant Walker released on a $150,000 unsecured bond with a condition that Walker continue his education and that he live in and abide by the rules of the Arete Center, a federal community treatment center in Saginaw, Michigan.
 
 
 4
 On February 7, 1991, Walker was indicted by a federal grand jury and charged with one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Walker's counsel filed two motions in limine requesting that the government not be able to use certain evidence in connection with Walker's prior felony conviction. During the hearing on the motions in limine, Walker and his attorney stipulated to the fact that Walker was a convicted felon on the date the search warrant was executed.
 
 
 5
 The matter proceeded to trial with the trial lasting only two days. After the selection of the jury, Walker, his counsel, and counsel for the government entered into a written stipulation that Walker had a prior felony conviction. As agreed between the parties, the issues for the jury's determination were limited to Walker's possession of the ammunition and the transportation of the ammunition in interstate commerce.
 
 
 6
 The evidence presented by the government to prove that Walker possessed the ammunition seized from his bedroom on January 11, 1991, included the testimony of FBI agents Stuart Case and Robert Lucas. Walker and three other people were in the house located at 829 South 24th Street, Saginaw, Michigan, when the search team arrived. When the search team entered the house, Kevin Jackson and John Whittington were on a mattress in the living room, Dexter Bond was in bedroom number 2, and defendant Walker was in bedroom number 1. Walker's bedroom had only one bed.
 
 
 7
 As earlier stated, numerous personal papers belonging to Walker were seized. Personal papers seized from the pocket of Walker's clothing and his wallet included a Michigan driver's license application in Walker's name dated November 12, 1990, which stated his address as 829 South 24th Street, Saginaw, Michigan. Other items seized included an order of probation regarding Larry Walker with the same address dated December 27, 1990, and Walker's signature; a letter dated January 3, 1991, from the Michigan Department of Social Services addressed to Larry Walker at the same address; a notice of right to timely appeal and a request of appointment of attorney from the Saginaw County Circuit Court bearing Walker's name and the same address; and a letter dated December 18, 1990, to Walker at the same address from Walker's defense attorney concerning Walker's state felonious assault case.
 
 
 8
 Mail seized from the kitchen cabinets in the residence which was addressed to Walker at the 829 South 24th Street address included a Cox Cable bill, a Michigan Telephone Company bill, and personal letters dated October 16, 1990, November 15, 1990, December 4, 1990, and December 18, 1990. From a drawer under the water bed in Walker's bedroom, Agent Case seized an automobile repair invoice containing Walker's signature which was dated December 10, 1990; a payment record from the Michigan Department of Treasury to Walker dated November 30, 1990, containing the address searched; a business letter and check made out to Larry Walker from the Michigan Department of Treasury at the same address and dated December 21, 1990; Walker's student I.D. for Delta College; and an envelope addressed to Walker at the same address with a December 26, 1990, postmark. Additionally, numerous other items were seized containing Walker's name and the address including a water and sewer bill sent to Walker at the address searched with a due date of January 15, 1991. After the search of his residence had been completed, Walker signed his name on the front page of the search inventory.
 
 
 9
 Dexter Bond and John Whittington later met with Agent Case at the FBI office to claim their personal property, particularly their clothing. At that time, neither claimed that anything seized from Walker's bedroom, particularly the ammunition, was theirs. Bond and Whittington claimed only the items seized from the other bedroom in the residence. Kevin Jackson obtained his wallet from Agent Lucas after the search by going to the FBI office and likewise did not claim that any of the ammunition was his.
 
 
 10
 As part of its case-in-chief, the government called Vera Dutkewych of the U.S. Treasury Department, Bureau of Alcohol, Tobacco and Firearms, who testified as an expert witness with regard to the ammunition seized. She testified that she examined the ammunition which was seized from Walker's residence on January 11, 1991, and found that none of the ammunition was manufactured in the State of Michigan, and, therefore, all the ammunition had traveled in interstate commerce.
 
 
 11
 In his defense, Walker presented a number of witnesses attempting to prove that he did not reside at the 829 South 24th Street, Saginaw, Michigan, address and that the ammunition was placed there by other individuals. Defendant Walker also took the stand in his own defense.
 
 
 12
 Before Walker took the stand, counsel for the government gave notice of intent to inquire during cross-examination of Walker regarding Walker's possession of a loaded .357 Smith & Wesson handgun on August 11, 1990, during the incident which gave rise to his felonious assault conviction. The request was made under Federal Rule of Evidence 404(b). The trial court took the matter under advisement pending Walker's direct examination.
 
 
 13
 Walker's direct testimony included his assertion that although he rented the house located at 829 South 24th Street, he never stayed there. He testified that he was in the 24th Street house less than three minutes before the search was initiated, and that he went to the residence possibly two times between September 21, 1990, and January 11, 1991. However, on cross-examination, Walker was unable to testify regarding how long he had actually lived in his 24th Street home. He admitted that he had told the state judge, who sentenced him on December 21, 1990, for his felonious assault conviction, that he lived alone at 829 South 24th Street at that time. He further admitted that he gave the same address when he was arrested on August 11, 1990; when he applied for a driver's license on November 15, 1990; and when he was arrested on the federal charge. Additionally, he admitted that he did not tell his state probation officer about any change of address.
 
 
 14
 When questioned about the plastic box containing assorted ammunition which had been seized from the shelf in his bedroom, Walker denied having ever seen the ammunition before. He was asked to look in the box to see if there were any .357 rounds. After he located a .357 round, Walker was asked if that was the type of ammunition that is used to load a .357 handgun. After he responded in the affirmative, counsel for the government again asked Walker if he had ever had a loaded .357 handgun in his possession. Over defense counsel's objection, which was overruled, Walker then admitted that he had a loaded .357 in his possession on August 11, 1990, when he committed the felonious assault.
 
 
 15
 Although Walker's counsel made a Rule 29 motion at the end of the government's case, he did not renew the Rule 29 motion following the close of the government's rebuttal. As earlier indicated, the jury returned a verdict of guilty.
 
 
 16
 Thereafter, at the sentencing hearing, Walker's counsel asked that Walker be given credit for the time served in the community treatment center. The government opposed the request noting that Walker was entitled to credit for time spent in detention, but that Walker was on bond rather than being detained when he was in the community treatment center. The trial judge held that Walker should not be given credit toward his custodial sentence for the time he spent in the community treatment center while on bond. He then sentenced Walker to a twenty-four month custodial term to be followed by three years of supervised release and also ordered that Walker be given credit for the time spent in detention prior to release on bond and after the jury verdict when he was taken into custody.
 
 II.
 A.
 
 17
 Defendant Walker claims, for the first time on appeal, that his civil rights had been restored under Michigan law even though he was still on probation at all times relevant to this case for his August 1990 conviction for felonious assault. Therefore, Walker argues that his conviction in this case is invalid as a matter of law.
 
 
 18
 When this matter proceeded to trial and after the jury had been selected, Walker signed a written stipulation along with his trial counsel and counsel for the government which states:
 
 STIPULATION OF FACTS
 
 19
 The defendant, Larry Walker, Jr., his defense counsel, Robert Currie and Janet L. Parker, counsel for the United States, hereby agree that the following facts are true and are to be considered proven beyond a reasonable doubt by the jury.
 
 
 20
 1. Larry Walker, Jr., the defendant in this case, pled guilty in Saginaw County Circuit Court to a charge of felonious assault on November 13, 1990, as part of plea agreement with the Saginaw County Prosecutor's Office.
 
 
 21
 2. Felonious assault is an offense punishable by incarceration in a state prison for four years.
 
 
 22
 3. Larry Walker, Jr. was sentenced on December 21, 1990 to a two year term of probation on the felonious assault conviction. (See attached Judgment of Sentence.)
 
 
 23
 4. Accordingly, in January of 1991, the defendant, Larry Walker, Jr., was a person who had been convicted of felonious assault, a crime punishable by imprisonment for a term exceeding one year.
 
 
 24
 J.A. 28.
 
 
 25
 This issue would normally be subject to de novo review. However, as this issue was not considered by the district court and in view of the stipulation entered into by defendant Walker, we will not consider this issue which was raised for the first time on appeal. See U.S. v. Pickett, 941 F.2d 411, 415 (6th Cir.1991).
 
 B.
 
 26
 We next turn to the issue of whether the trial judge abused his discretion in allowing cross-examination of Walker as to his prior possession of a loaded handgun after Walker denied living in the house where the ammunition was seized and knowing that there was any ammunition in his bedroom. United States v. Acosta-Cazares, 878 F.2d 945, 948 (6th Cir.1988), cert. denied, 493 U.S. 899 (1989) (a district court's 404(b) ruling is reversed only upon a finding of abuse of discretion).
 
 
 27
 On appeal, defendant Walker argues that the district court abused its discretion by allowing cross-examination relative to the factual setting of Walker's previous conviction for felonious assault. The government offered the evidence under Rule 404(b) on the ground that it was probative of defendant's knowledge of his possession of the ammunition. Defendant, however, argues that the evidence of his use of a loaded .357 handgun in a felonious assault is evidence of prior crimes, wrongs, or acts used to prove that he acted in conformity with his character. Rule 404(b) forbids the admission of extrinsic acts for that purpose.[1] Huddleston v. United States, 485 U.S. 681, 687 (1988).
 
 
 28
 From our review of the record, we conclude that Rule 404(b) does not apply to the evidence of the loaded .357 handgun. Before defendant testified, the jury was already aware of defendant's felonious assault conviction by virtue of the written stipulation of facts signed by defendant Walker, his counsel, and counsel for the government. Moreover, the felonious assault was part of the very crime for which the defendant was being tried because it was the predicate offense upon which the charge of illegally possessing a handgun was based. The only new information that the jury learned from the cross-examination about the felonious assault was that defendant possessed a loaded .357 handgun. No other details concerning the felonious assault were brought out in cross-examination of defendant Walker. Clearly, this evidence of the handgun was not the type of extrinsic evidence forbidden by Rule 404(b). Rather, it was direct evidence of defendant's possession of the ammunition because it showed that defendant had a reason to possess rounds of .357 ammunition. Therefore, the district court did not abuse its discretion in allowing the cross-examination as defendant Walker "opened the door" to examination regarding his recent possession of a loaded handgun. Moreover, we find no prejudice to the defendant as the jury was already aware of his stipulated prior felonious assault conviction. Error, if any, in allowing the cross-examination complained of was harmless beyond a reasonable doubt.
 
 C.
 
 29
 Finally, we turn to the issue of whether the trial judge properly refused Walker's request for credit for the time he spent while on bond before trial in the community treatment center. In his brief, Walker argued that because he was required to reside in the Arete Federal Community Treatment Center as a condition of his release on bond pending trial, he was entitled to credit on his sentence for the time he spent in the community treatment center.
 
 
 30
 The government responded that under 18 U.S.C. § 3585(b), it is the attorney general, not the district judge, who is empowered to compute the amount of credit, if any, a defendant shall receive. At oral argument, counsel for Walker conceded that the government is correct. In United States v. Wilson, --- U.S. ----, 112 S.Ct. 1351 (1992), the Supreme Court held that pursuant to section 3585(b) the attorney general, not the district court, must compute the amount of credit to be given toward a defendant's sentence after the defendant has begun to serve his sentence. Should a defendant wish to challenge the attorney general's computation of credit, he must proceed through the proper administrative avenues first before judicial review is available. Id. at 4246.
 
 III.
 
 31
 For the reasons stated, the district court is AFFIRMED in all respects.
 
 
 
 [1]
 Fed.R.Evid. 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.